IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF SOUTH CAROLINA

CHARLESTON DIVISION

| | | |
|---|---|---|
| Protection and Advocacy for People with Disabilities, Inc., | ) ) ) | Civil Action No. 2:20-cv-02738-DCN |
| Plaintiff, | ) ) ) | **COMPLAINT** |
| vs. | ) ) | |
| James Alton Cannon, Jr., in his official capacity as Charleston County Sheriff, Mitch Lucas, in his official capacity as Assistant Charleston County Sheriff, Willis Beatty, in his official capacity as Chief Deputy of the Charleston County Sheriff's Office, and Charleston County School District, | ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) ) ) | |

Plaintiff Protection and Advocacy for People with Disabilities, Inc. ("P&A" or "Plaintiff"), by and through its undersigned counsel, files this complaint against Defendants James Alton Cannon, Jr., Mitch Lucas, and Willis Beatty (collectively "CCJDC Defendants"), and Charleston County School District ("CCSD"), and alleges as follows:

## NATURE OF THE ACTION

1. This is a civil rights action brought by Plaintiff to address the dangerous, inhumane, and unconstitutional conditions, policies, and practices that exist and have existed for the children detained at the Charleston County Juvenile Detention Center (the "CCJDC"), including children with disabilities (the "Children"). These Children, who are as young as 11 years old, are held prior to being convicted of any crime, and they are held for the purpose of rehabilitation. Rather than being cared for and rehabilitated, however, they are locked in small,

1

cold, moldy, unsafe, and unsanitary cells often for 22 or more hours per day, prevented from ever going outside, denied sufficient (or, in some cases, any) education, denied sufficient (or, in some cases, any) recreational activities, denied sufficient (or, in some cases, any) medical attention and medication, denied sufficient mental health care and support, and placed in solitary confinement for extended periods of time. In some cases, the CCJDC Defendants punish the Children by using cruel methods such as locking the Child in a small "wet cell"—which is a converted mop closet where Children have been placed for days with nothing other than a small bench and drain in the floor to relieve themselves—or shackling the Child to a "restraint chair" for hours at a time, both without adequate monitoring. In some circumstances, guards and other outside police officers use guns with rubber bullets or bean bags as well as pepper spray and tasers to establish order in the facility. Forcing Children—especially Children with mental or physical disabilities—to live in these medieval conditions is unconscionable and inexcusable, especially in the United States in the 21st century. These practices not only fail to achieve the goal of rehabilitation, but they sabotage it, causing irreparable damage not only to the most fragile members of our society at the most vulnerable times in their lives, but to society itself because of the heightened risk that these Children will become permanently trapped in a cycle of crime. This must stop.

2.      The systemic deficiencies at the CCJDC exist because generally accepted juvenile justice standards are not being followed. The widespread and significant deficiencies at the CCJDC violate the Fourteenth Amendment's mandate that youth in pretrial custody be protected from harm and not be subjected to punishment.

3.      Plaintiff brings this action to redress violations by the Defendants, acting under color of state law, of the civil and constitutional rights of the Children. Defendants are

deliberately indifferent to the substantial risks of harm these children face at CCJDC, and Defendants' conditions, policies, and practices at CCJDC constitute punishment and a substantial departure from accepted professional judgment, practices, and standards. The conditions at the CCJDC, and the policies and practices of Defendants, endanger the Children's physical health and safety, threaten the Children's emotional and psychological well-being, deprive the Children of adequate programming and education, and deprive the Children of due process of law.

4.      Complaints raised by parents about the neglectful and abusive treatment of their children have been ignored for years. Complaints by local attorneys with the Charleston County Public Defender's Office have also failed to convince the CCJDC Defendants to remedy these egregious constitutional violations.

5.      Plaintiff, on behalf of the Children, asserting associational and organizational standing, seeks declaratory and injunctive relief against Defendants on the grounds that Defendants have deprived the Children of the rights secured to them by the Eighth and Fourteenth Amendments of the United States Constitution, as enforced by 42 U.S.C. § 1983, the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12182 *et. seq.*, the Rehabilitation Act, 29 U.S.C. §§ 794 *et seq.*, the Individuals with Disabilities Education Act ("IDEA"), Title 20, United States Code §§ 1401 *et seq.*, and relevant provisions of federal and state law.

6.      The allegations in this Complaint regarding the conditions of confinement at the CCJDC facility and Defendants' policies, practices, acts, and omissions are based on, among other things, interviews with at least forty-five (45) Children or parents of Children who have been and/or are detained at the CCJDC.

## JURISDICTION & VENUE

7.     This Court has jurisdiction over this action under 28 U.S.C. § 1343(a)(3), this being an action to redress the deprivation of rights under color of state law secured by the Constitution.

8.     This Court also has jurisdiction over this action under 28 U.S.C. § 1343(a)(4), this being an action to secure declaratory and injunctive relief under Acts of Congress providing for the protection of civil rights, specifically the Civil Rights Act.

9.     This Court also has jurisdiction over this action under 28 U.S.C. § 1331, this being an action in which the matter in controversy arises under the Constitution and laws of the United States.

10.     This Court is authorized to grant declaratory and injunctive relief under 28 U.S.C. §§ 2201 and 2202 and Rules 57 and 65 of the Federal Rules of Civil Procedure.

11.     This District is an appropriate venue for this action pursuant to 28 U.S.C. § 1391(b) as the acts and events giving rise to the claims herein occurred within the Charleston Division of South Carolina.

## PARTIES

12.     P&A is a private, not-for-profit South Carolina corporation established as a protection and advocacy organization for the State of South Carolina and charged by state and federal law to protect and advocate for the rights of people with disabilities in South Carolina.

13.     James Alton Cannon, Jr. is named as a defendant in his official capacity as Sheriff of Charleston County. Sheriff Cannon's office is responsible for the operation, staffing, and oversight of the CCJDC.

14.     Mitch Lucas is named as a defendant in his official capacity as Assistant Charleston County Sheriff. Assistant Sheriff Lucas assists Sheriff Cannon in the operation, staffing, and oversight of the CCJDC.

15.     Chief Deputy Willis Beatty is named as a defendant in his official capacity as Chief Deputy of the Sheriff's Office of Charleston County and as the director of the CCJDC. As the director of the CCJDC, Defendant Beatty is charged with the overall responsibility for the operations and safety of the Children there.

16.     The Charleston County School District is the school district in Charleston County that has statutory responsibility for providing adequate teaching staff at the CCJDC and for ensuring the CCJDC's compliance with the educational requirements of South Carolina.

17.     The Charleston County Sheriff's Department and the Charleston County School District are public entities as defined under Title II of the ADA, 42 U.S.C. § 12131(1)(B).

## FACTUAL ALLEGATIONS

18.     The CCJDC is located in a building more than 50 years old and situated at the end of a lightly traveled street in North Charleston. The facility is outside of the public eye and, according to the Charleston County website, has 26 beds. Children detained at the CCJDC range in age from 11 to 16.

19.     Numerous conditions and practices at the CCJDC violate the Children's constitutional and statutory rights. These conditions and practices include, but are not limited to, the following:

**Unsanitary and Unsafe Conditions**

20.     The CCJDC Defendants fail to maintain the CCJDC in a sanitary and safe condition. The roof of the CCJDC facility leaks, and the facility and cells have visible mold and

dirt. The CCJDC wreaks of mold and plays host to rodents, spiders, ants, roaches, bed bugs, and termites. Often children suffer from bug bites and rashes and are visited by rats. Moreover, most Children are forced to eat their meals in their cells.

21.     No pillows are provided and often blankets are denied either as punishment or for other reasons. The building is kept very cold, and the denial of blankets causes significant discomfort and sleep deprivation.

22.     Because of visible mold and chronic moisture in the building, it is probable that the air quality is not healthy, particularly for Children with asthma, chronic bronchitis, compromised immune systems, and other physical vulnerabilities.

23.     The CCJDC staff tell the Children to drink the water from the sinks in their cells and use the water from these sinks to brush their teeth, but the water from these sinks is milky-white in color, smells bad, and appears unsafe for drinking.

24.     The CCJDC regularly experiences sewage drainage problems that cause flooding. Overflowing toilets are a regular occurrence due to inadequate plumbing and sometimes cause water contaminated with urine and feces to flow onto the same floors where Children have been required to sleep in overcrowded conditions. Children reportedly are required to clean up the sewage on the floors using only a mop and water. Worse still, Children are frequently blamed for overflowing toilets which are caused by poor plumbing systems, and lockdowns are often used to punish Children for these events.

25.     The CCJDC Defendants have inadequate capacity to respond to emergencies such as behavioral disturbances, fires, or other situations requiring evacuation. Fights and/or attacks sometimes take place in cells without guards making any effort to halt the violence and to restore order.

26.     The CCJDC Defendants require Children to sleep in small, locked, and bare cells, with a metal or concrete bed covered with a thin mattress. When the CCJDC becomes overcrowded, Children are forced to sleep on the floor on thin mats, sometimes in wet conditions caused by roof leaks and overflowing toilets. There is a small window to the outside in the cells, but the Children are not able to see out of it because it is very high and, in any event, is clouded with dirt and moisture with a metal grate covering behind which trash has been placed.

27.     During significant storms, the facility is evacuated and the Children are placed temporarily in a vacant, open-concept wing of the adult detention center.

28.     The cells are not adequately heated and cooled.

29.     The CCJDC Defendants' failure to provide sanitary and safe conditions at the CCJDC violates the constitutional rights of the Children and causes them harm.

**Arbitrary and Excessive Use of Solitary Confinement**

30.     Children at the CCJDC are routinely locked in their cells for 22 or more hours per day, sometimes alone and sometimes with other Children. To the extent the Children are permitted to leave their cells at all, they are often permitted to do so for only 1-2 hours per day. Thus, the Children housed at the CCJDC are, as a practical matter, placed in solitary confinement for virtually their entire stay at the CCJDC—whether this is for days, weeks, or months. As a consequence of the lack of stimulation and sensory deprivation, many Children at the CCJDC sleep or simply lie on their beds for long periods during the day.

31.     In addition, to mete out punishment for various offenses, the CCJDC Defendants frequently place Children on "lockdown" in their cells. On lockdown, conditions are worse yet. Lockdown means the Children cannot leave their cells at all—no visitation with family, no education sessions, no showers, no recreation time, no bible study, no church. Instead of being

confined to their cells for 22-23 hours a day, they must stay in their cages for 24 hours a day. During lockdowns, Children may also lose their blanket, which is necessary to stay warm in the very cold environment of the facility. They have to eat in their cells. Lockdowns can last 24, 48 or 72 hours, and the length can be increased at the whim of the guards. Sometimes individual Children are locked down, and sometimes all of the Children are placed on lockdown at the same time. Lockdowns have been ordered for offenses such as laughing, cursing, spitting, or talking out of turn.

32.    Children are placed in lockdown as punishment without any due process.

33.    Under their existing policies and practices, CCJDC Defendants regularly place Children on lockdown for the convenience of staff or, in some instances, instead of providing therapeutic programming.

34.    CCJDC Defendants do not have a procedure by which qualified professionals determine whether and to what extent isolation is appropriate.

35.    Many Children report that when a toilet overflows in a cell—which is a common occurrence because of the antiquated plumbing in the building—the affected Children are blamed for the overflow and placed on lockdown. The Children have no understanding of any consistent or rational application of lockdowns for particular offenses, but they understand that a lockdown is imposed as a punishment, not merely as a cool down measure used to de-escalate or to protect the Children from themselves or others.

36.    The CCJDC Defendants' practices with respect to solitary confinement—both as a default means of housing and also through use of lockdowns as punishment—are unconstitutional and grossly inconsistent with accepted practices and federal and state law. Removing Children from their regular routines, school, mental health treatment, and

opportunities for interaction with peers can result in long-term lack of trust, hypervigilance, and paranoia.

37.     A number of national organizations have concluded that solitary confinement should never be used for minors. For example, standards published by the National Commission on Correctional Health Care ("NCCHC") require that youth "should be excluded from solitary confinement of any duration." The American Medical Association and the American Academy of Child & Adolescent Psychiatry ("AACAP") similarly oppose the use of solitary confinement for children and adolescents. The Juvenile Detention Alternatives Initiative ("JDAI") has published comprehensive standards that prohibit the use of solitary confinement as a disciplinary measure or for any reason other than as a temporary response to behavior that threatens immediate harm to a youth or to others. These standards state that facilities should not use room confinement as a substitute for special individualized programming, including educational services and treatment plans developed with mental health staff and the youth's family members. If a young person is placed in isolation, JDAI standards require that the isolation last no longer than four hours and that staff develop individualized programming for the youth or consult with a qualified mental health professional about whether a youth's behavior requires that he or she be transported to a mental health facility. The NCCHC has recognized that children are different from adults, making their time spent in isolation even more difficult and the developmental, psychological, and physical damage more comprehensive and lasting. Children experience time differently—a day for a child feels longer than a day to an adult—and have a greater need for social stimulation. AACAP has similarly concluded that, due to their developmental vulnerability, adolescents are at particular danger of adverse reactions, including depression, anxiety, and psychosis, when exposed to prolonged isolation and solitary confinement.

Unfortunately, many of the Children detained at the CCJDC *already* suffer from depression, post-traumatic stress, anxiety, and psychosis. Placing these Children in solitary confinement, especially for extended periods of time, exacerbates these Children's problems and causes irreparable harm.

38.     Solitary confinement is antithetical to the goal of maintaining safety and security in juvenile detention facilities. When a child is experiencing anger as a symptom of mental illness, use of solitary confinement often results in additional anger, and then additional time in solitary confinement. According to the CJCA, academic research continues to show that placing incarcerated youths in solitary confinement has negative public safety consequences, does not reduce violence, and likely increases recidivism. Further, there is no research showing the benefits of using solitary confinement to manage youth behavior. By contrast, facilities that have reduced or eliminated the use of solitary confinement have seen a reduction in violence and infractions. These facilities have ensured that separation occurs only after multiple attempts to defuse tensions, and not as an alternative to controlling the manifestations of mental illness.

39.     The harms from the improper and excessive use of solitary confinement are increasingly recognized around the nation. Federal courts in four states have ordered facilities to cease improper solitary confinement. Seven states have enacted laws in the past three years limiting the use of solitary confinement in juvenile facilities, and several other states are considering similar legislation. In December 2018, Congress passed bipartisan legislation to limit solitary confinement of youth in federal facilities in the First Step Act. The First Step Act allows only brief isolation when there is an immediate risk of physical harm and never as a punishment.

40.     Some Children at the CCJDC with mental illness have a difficult time complying with the CCJDC's disciplinary rules because of their illness. As a result, Children are often

placed in solitary confinement as a result of their illnesses. Placing Children with mental illness in solitary confinement—especially when doing so for extended periods of time—exacerbates the suffering and difficulties associated with the mental illness.

41.     CCJDC Defendants' failure to provide sufficient mental health services to the Children also results in symptomatic behavior giving rise to punishment, instead of the treatment that is needed. These punishments result in long-lasting and substantial harm to all Children and are particularly harmful to Children already suffering from significant mental illness.

42.     To the extent solitary confinement is used, the Child in solitary confinement should receive constant supervision from qualified mental health clinicians. At the CCJDC, however, children placed in solitary confinement are not under constant supervision and often do not have frequent contact with mental health clinicians. This practice creates a dangerous situation for the Children.

43.     CCJDC Defendants also fail to provide Children placed in solitary confinement with adequate education, counseling, recreation, or other rehabilitative treatment.

44.     Guards administering lockdowns lack proper training and qualifications to administer this punishment within appropriate limits to ensure the health and safety of the Children.

45.      Children held in solitary confinement often experience extreme loneliness, anxiety, rage, suicidal thoughts, and depression, among other potentially debilitating emotional and psychological problems. CCJDC Defendants fail to ensure that prolonged use of solitary confinement does not have adverse psychological consequences on isolated Children.

46.     The use of solitary confinement at the CCJDC violates the constitutional rights of the Children housed there.

**Use of excessive force, the "restraint chair," and the "Wet Cell"**

47.     CCJDC Defendants also violate the Children's rights through the use of excessive force, including using tasers and pepper spray, shooting Children with firearms loaded with rubber bullets or bean bags, confinement to a restraint chair, and extreme solitary confinement in the "wet cell." The CCJDC's practices of firing weapons and using mechanical restraints on Children as forms of punishment and behavior management are unconstitutional and grossly inconsistent with accepted practices. Further, these practices cause significant harm to the Children and are not justified by any nonpunitive governmental purpose.

48.     Experts recognize that physical and mechanical restraints of children, as with improper seclusion, can cause physical, psychological, and emotional damage.

49.     Physical force or mechanical restraints should be used on children only if less restrictive alternatives would be ineffective and, even then, only to the degree and duration necessary to bring the situation under control. Moreover, any application of physical force or mechanical restraints should be fully documented.

50.     At the CCJDC, as a form of punishment more severe than the everyday confinements to cells for 22-23 hours, and also more severe than lockdowns, CCJDC Defendants place Children in what is commonly referred to as the "wet cell," which is a small, windowless room about the size of a mop closet, lit by a single dim light bulb in the ceiling and containing only an air vent, a bench, and a drain on the floor. Because the wet cell has no toilet, a Child confined to the room may be forced to "wet" himself or herself when he or she needs to urinate if toilet access is not provided timely—hence, the name the "wet cell." Children placed in the wet cell sometimes have their ankles shackled and their wrists handcuffed while they are in the cell

and/or when they are being escorted to the toilet. Children report being confined to the wet cell for two to five days at a time and, in one instance, for ten days.

51.     As another form of punishment, the CCJDC Defendants place Children in a restraint chair, which is sometimes used in conjunction with the wet cell. The restraint chair looks like an electric chair with straps used to fully immobilize the Children by strapping down their feet, legs, torso, arms, neck, and head. Children are placed in the restraint chair for arbitrary and minor offenses, and they are restrained for excessive lengths of time and without any monitoring by qualified mental health professionals. No due process is offered prior to strapping Children into the chair as punishment. In at least one incident, a Child was placed in a restraint chair for twelve hours as punishment for continuing to laugh after being told to stop, and another Child was strapped into the chair in the wet cell for two days for fighting.

52.     CCJDC Defendants rely on the wet cell and the restraint chair as disciplinary measures for arbitrary and inconsistent reasons that vary based upon what guards are on duty. CCJDC Defendants' arbitrary practices lead to excessive punishment for the Children. These practices are especially detrimental for Children with mental health problems, such as PTSD, anxiety, or depression.

53.     Placing a Child suffering from mental illness in the wet cell or a restraint chair would almost certainly exacerbate the Child's mental illness, and placing a Child who did not previously suffer from mental illness in the wet cell or restraint chair could cause the Child to begin suffering from mental trauma.

54.     In response to fights and disorder, the CCJDC guards and/or an outside SWAT team known as the "Green Team" also uses tasers, pepper spray, guns loaded with rubber bullets, and/or shotguns with bean bags to restore order and discipline. Children are targeted with these

weapons for failing to follow orders such as failing to get on the ground when instructed or failing to get out of the shower when instructed. Being exposed to pepper spray, or being shot with a taser, rubber bullets and bean bags, causes extreme pain, bruising, humiliation and emotional harm.

55.    Children exposed to the use of these weapons are not afforded due process and are placed at substantial risk of harm. The use of these forms of force exceed appropriate limits, is not the least harmful alternative, and serves no justifying governmental purpose.

56.    The use of the restraint chair, the wet cell, tasers, pepper spray, guns loaded with rubber bullets, and/or shotguns with bean bags constitutes the use of excessive force.

57.    Guards or SWAT Team members using pepper spray, tasers, rubber bullets, bean bags, the wet cell and/or the restraint chair lack proper training and qualifications to administer such punishment and do not administer such punishment within appropriate limits to ensure the health and safety of the Children.

58.    The use of excessive force violates the constitutional rights of the Children.

**Overcrowding and Failure to Provide Beds to Children**

59.    The CCJDC facility is frequently overcrowded, resulting in Children being forced to sleep on the floor of the facility. While the CCJDC has a capacity of 26, the facility had an average daily occupancy in 2017/18 (the last year for which an average daily population has been published) of 57. The total number of Children housed in the facility on an annual basis has increased in each fiscal year since 2017/18, and no steps have been taken to ease the overcrowding on a permanent basis.

60. Moreover, CCJDC routinely accepts youth from Berkeley, Dorchester, and Colleton counties—for a fee—despite overcrowded conditions and even though it is not feasible to provide them educational services from their home school district.

61. Even in cells with only two Children, the cells are too small and fail to provide adequate space per occupant. Most of the cells at the CCJDC facility are designed for single occupancy, but these cells frequently house more than one Child, and sometimes as many as four Children.

62. The cells do not contain desks, hooks or closet space, or a chair or stool, as required by accepted standards. The furnishings in the cells present a suicide hazard.

63. Forcing more than two Children to live and sleep in the small cells of the CCJDC is dangerous, unhealthy, and violative of the Children's constitutional rights.

**Failure to provide outdoor access and programming**

64. CCJDC Defendants fail to provide the Children with adequate programming. Children at the CCJDC have a constitutional right to adequate treatment, including, among other things, fresh air and outdoor access, adequate behavior management, and recreation programs. Generally accepted professional standards require that juvenile justice facilities provide not only education, but also recreation and meaningful activities such as group and individual therapy, social skills training, and other programming. Further, South Carolina law provides that, at juvenile detention facilities, "[s]chedules must be developed which include designated times for sleeping, dining, education, counseling, recreation, visitation, and personal time," and "[d]aily schedules should minimize idleness and promote constructive use of the juvenile's day." CCJDC Defendants are flagrantly breaking this law every day.

65. CCJDC Defendants fail to provide any regular structured indoor or outdoor recreation and, in fact, frequently require Children to remain in their cells for 22 or more hours per day and never allow them to go outside the CCJDC building, and sometimes that means the Children do not see the sun and sky for weeks or months at a time. CCJDC Defendants also fail to provide access to regular large muscle exercise activities. As a result of these practices, the Children suffer from extended periods of forced idleness and lack of sunlight.

66. Forcing Children to remain indoors and in small cells for weeks or months at a time without access to sufficient recreation—particularly in conditions such as those that exist at the CCJDC—causes the Children to suffer physical, psychological, mental, and emotional injuries.

67. The problems created by the inadequate programming and outdoor access at the CCJDC are exacerbated by the lack of an adequate behavior management program at the CCJDC. CCJDC Defendants' failure to provide outdoor access, adequate programming or behavior management is not only violative of the Children's rights, but predictably results in behavior problems.

**Failure to provide separation of individuals with violent propensities**

68. Children have a right to be free from unreasonable threats to their physical safety. To ensure Children housed at the CCJDC are safe, the facility must have a system for screening and separating aggressive juveniles from more passive ones and for determining appropriate levels of institutional classification.

69. CCJDC Defendants fail to provide such a system for screening and separating aggressive from passive Children. The problems of overcrowding, understaffing, and poor

training compound the danger posed to weaker and younger Children by older, stronger, and more aggressive Children.

70.     As a result of failing to separate the Children properly, younger, smaller and more vulnerable children have been beaten up by larger and more aggressive Children. Guards do not always respond to such attacks in a timely manner, even when other Children make loud noise by shouting for help and banging on walls and doors.

71.     The lack of a system of separation poses a serious risk of injury to Children, and CCJDC Defendants are deliberately indifferent to these risks.

**Failure to Provide Adequate Health Care**

72.     CCJDC Defendants are aware that many children incarcerated at the facility have specific medical needs, including physical ailments such as asthma, chronic bronchitis, sleep disorders, and diabetes. CCJDC Defendants are deliberately indifferent to the health needs of the Children. CCJDC Defendants do not provide regular and appropriate medical assessments to the Children upon admittance, and CCJDC Defendants fail to provide timely access to qualified health professionals when the Children are in need of health services. Further, when Children do receive healthcare services, the services are inadequate.

73.     CCJDC Defendants frequently fail to provide the Children with their prescribed medications at the proper dosages at proper intervals or, in many if not most cases, fail to provide the Children with their prescribed medications at all. Often CCJDC Defendants refuse to accept medicines provided by parents of the Children, or they will accept the medicines and return them unused at the end of the incarceration period.

74.     CCJDC Defendants fail to provide a continuity of medical care and adequate documentation for the care that is provided.

75. In at least one instance the CCJDC Defendants' neglect of a child's need for regular medication for severe asthma resulted in worsening of the Child's condition and the need for her to be transported to the hospital in an ambulance.

76. As a result of CCJDC Defendants' deliberate indifference, the Children with health care needs do not receive adequate treatment and suffer physical and emotional harm in violation of their constitutional rights.

**Failure to Provide Adequate Mental Health Care**

77. CCJDC Defendants are fully aware that many, if not most, Children detained at the CCJDC suffer from various forms of mental illness, and many are prescribed psychotropic medications. CCJDC Defendants nonetheless are deliberately indifferent to the serious mental health needs of these Children. CCJDC Defendants very often fail to provide Children with their prescribed medications, including psychotropic medications, and fail to provide any regular individualized psychiatric assessment, treatment, counseling, or psychotherapy to the Children in need of such services.

78. CCJDC Defendants also fail to do the following:

    (a) Properly screen the Children for medical conditions, including mental health conditions, upon their arrival at the CCJDC.

    (b) Employ a sufficient number of qualified mental health professionals to counsel and treat the Children with mental health treatment needs.

    (c) Adequately train and supervise staff to respond in appropriate ways to the Children with mental health issues.

(d)     Provide a continuum of mental health services to meet the needs of the Children.

(e)     Maintain adequate mental health records for the Children.

(f)     Provide adequate or effective group counseling by trained staff.

(g)     Provide adequately for Children who are suicidal or in emotional crisis.

(h)     Coordinate follow-up care with community-based mental health and medical providers for Children upon their release from the CCJDC.

79.     As a result of these failures, the Children do not receive counseling or other necessary mental health treatment, and their mental condition deteriorates.

80.     As a result of CCJDC Defendants' deliberate indifference to the serious mental health needs of the Children, the Children with mental health needs do not receive adequate treatment and suffer harm in violation of their constitutional rights.

**Failure to Provide Adequate Facilities for Physically Disabled Children**

81.     Physically disabled children are not housed at the CCJDC facility in a manner that provides for their safety and security.

82.     Cells at the CCJDC facility are not designed for the use of, and are not designed to provide for the integration with the general population of, physically disabled Children.

83.     Parts of the CCJDC facility that are designed for public access are not accessible by visitors and staff who are physically disabled.

**Failure to Provide Access to Adequate Education Services**

84.     Defendants have failed to develop and implement policies and procedures to assure that all Children at the CCJDC have access to educational services, including special education services, as mandated by state and federal law.

85.     Defendants' deficiencies include the failure to do all of the following:

(a)     Meet the classroom instructional mandates of state law.

(b)     Provide an adequate number of teachers.

(c)     Provide adequately trained teachers.

(d)     Provide age appropriate education for each Child.

(e)     Appropriately divide the Children into separate classes rather than grouping Children from different grade levels together.

(f)     Provide a process for obtaining Children's previous education records.

(g)     Maintain appropriate records of school work performed at the CCJDC and provide a report of school work to the Children's parents, guardians, or home school.

(h)     Provide access to guidance services necessary for the Children's achievement of educational and career planning goals required as a part of their rehabilitation and treatment.

(i)     Provide disabled students with a free and appropriate education, including related and transition services, in accordance with the IDEA and state statutory requirements.

86. Children at the CCJDC are often not permitted to attend school at all, are only allowed to attend school for a few hours a day, or are removed from school for arbitrary or punitive reasons.

87. CCJDC Defendants confine a substantial number of Children who are eligible for and require special education services, but Defendants fail to provide these Children with adequate special education services. Defendants fail to, among other things:

(a) Adequately identify, assess, or evaluate Children to determine whether they have special needs and how such special needs can be met.

(b) Follow established individualized education plans (IEPs) for Children who receive special education, or in the case of a Child detained for months, establish an IEP if appropriate and needed.

(c) Provide related services, such as speech therapy and psychological therapy, to Children with disabilities who need such services to benefit from their education.

(d) Obtain and/or provide adequate information from schools that Children attend prior to their detention at the CCJDC to properly ascertain the Children's special needs.

(e) Employ adequately trained, certified special education teachers to provide special education services to Children who need these services.

88.     As a result of Defendants' failures, the Children are denied their right to education and do not make progress in school, sometimes resulting in the Children being forced to repeat a year of school or to drop out altogether.

89.     Defendants' failure to provide adequate education to the Children, including the Children who need special education services, violates the Children's constitutional rights.

**Cross gender privacy issues**

90.      CCJDC houses both male and female Children.

91.     Although females are generally housed in a different wing of the building, CCJDC Defendants fail to ensure the privacy and safety of female Children. Specifically, male guards have ready access to the female wing, and the windows in cell doors allow guards to view females in their cells, including when they are dressing, performing personal hygiene, and using the toilet.

92.     The lack of privacy afforded female Children renders them susceptible to trauma and contributes to anxiety and loss of self-esteem, which are counterproductive to the goals of juvenile justice.

93.     At times, female Children at the CCJDC have also been denied female-specific personal hygiene items such as sanitary napkins and/or menstrual pads.

**Failure to Adequately Train and Supervise Staff**

94.     CCJDC Defendants have failed to adequately train and supervise staff at the CCJDC for the usual and recurring situations that they face, and the Children are injured as a direct consequence. The need for more and better staff training is so obvious that CCJDC Defendants' failure to provide such training amounts to deliberate indifference.

**Failure to Provide Adequate Grievance System**

95.     CCJDC Defendants have failed to provide meaningful access to and maintenance of an adequate grievance system. The grievance policies are not clear, and CCJDC Defendants do not timely, if at all, respond to grievances. Investigations of grievances are inadequate, and when responses are provided, they rarely are adequately resolved.

96.     The Children, by virtue of their age, lack of maturity, and education levels, are often unfamiliar with their legal rights and remedies, and they fear retribution for complaining about conditions. In addition, they are often unaware of how to obtain access to the courts or to challenge the legality of their commitments, their continued confinement, and institutional practices and conditions that may violate their civil rights.

**Lack of Due Process for Alleged Disciplinary Violations**

97.     CCJDC Defendants are required to provide the Children with procedural due process if they are charged with a disciplinary violation while detained. However, the absence of an established disciplinary system, including adequate behavior management programming, results in an informal system of control based on the unfettered discretion of individual detention officers. This practice is unconstitutional.

**Necessity for Injunctive Relief; No Adequate Remedy at Law**

98.     CCJDC Defendants have acted and continue to act in violation of the law as described herein. As a proximate result of the policies, practices, acts, and omissions of CCJDC Defendants, the Children have suffered and continue to suffer serious and irreparable physical, psychological, mental, and emotional injuries. Plaintiff, and the Children detained at the CCJDC, have no plain, adequate, or complete remedy at law to redress the wrongs described herein. Unless the Court provides the relief requested by Plaintiff, the Children will continue to suffer

irreparable injuries from the conditions of confinement at the CCJDC facility and Defendants' policies, practices, acts, and omissions.

**Knowledge of the Defendants**

99.     CCJDC Defendants have acted, and continue to act, under the color of state law with respect to all matters alleged herein. All of the conditions, policies, and practices described herein are the result of, and pursuant to, specific decisions, official policies, or customs of the Defendants. Defendants have actual or constructive knowledge, or should have such knowledge, of the conditions, policies, and practices complained of herein.

## FIRST CAUSE OF ACTION
(Declaratory Judgment: Substantive Due Process Under the Fourteenth Amendment to the U.S. Constitution Asserted Against All Defendants)

100.     The preceding paragraphs are incorporated herein as if re-stated verbatim.

101.     When the Defendants take a Child into custody, they assume a duty under the Fourteenth Amendment to protect the Child from harm and substantial risks of serious harm.

102.     Children held at the CCJDC have substantive due process rights that include, but are not limited to: the right to be free from any punishment while they are detained pending trial; the right to be free from and protected from physical, psychological, and emotional harm; the right to necessary treatment, care, and services; the right not to deteriorate physically, psychologically, or emotionally while in state custody; and the right to be free from substantial risks of the above-mentioned harms.

103.     The conditions of confinement at the CCJDC facility and Defendants' policies, practices, acts, and omissions complained of herein constitute the impermissible punishment of pretrial detainees.

104.     Defendants know of a substantial risk of serious harm that these Children will suffer as a result of these practices and policies. Defendants' actions and inaction shock the conscience and are in deliberate indifference to serious, known health and safety needs of the Children, and create substantial risks of serious harms in violation of the Children's rights under the Fourteenth Amendment.

105.     The conditions of confinement at the CCJDC facility and Defendants' policies, practices, acts, and omissions complained of herein have also resulted in the imposition of disciplinary punishment and other restrictions on Children at CCJDC without notice, opportunity to contest or appeal the restrictions, or other constitutionally adequate procedural due process as guaranteed by the Fourteenth Amendment to the United States Constitution, and related sections of the South Carolina Constitution.

106.     The conditions of confinement at the CCJDC facility and Defendants' policies, practices, acts, and omissions complained of herein have deprived the Children at CCJDC of their constitutionally protected property interest in receiving the minimum education required under federal and state statutes and regulations as guaranteed by the Fourteenth Amendment to the United States Constitution and related sections of the South Carolina Constitution.

107.     Consequently, Plaintiff is entitled to a declaratory judgment from this Court declaring that Defendants have violated the constitutional rights of the Children at CCJDC as guaranteed by the Fourteenth Amendment to the United States Constitution and related sections of the South Carolina Constitution.

**SECOND CAUSE OF ACTION**
(Declaratory Judgment: Eighth and Fourteenth Amendments as to CCJDC Defendants)

108.     The preceding paragraphs are incorporated herein as if re-stated verbatim.

109. The Eighth Amendment prohibits the imposition of cruel and unusual punishment on convicted and incarcerated juveniles, including by exercising deliberate indifference to substantial risks of serious harm, inhumane conditions, and inadequate medical and mental health care.

110. The above-described conditions of confinement at the CCJDC facility and Defendants' policies, practices, acts, and omissions have inflicted, and continue to inflict, grave and inhumane deprivations, injuries, and risks to the Children at CCJDC, all of which violate contemporary standards of decency and are intolerable in today's society.

111. The risks of harm to the Children at CCJDC as a result of the above-described conditions of confinement at the CCJDC facility and Defendants' policies, practices, acts, and omissions are obvious and known to Defendants.

112. Moreover, the CCJDC Defendants were notified of these risks by others and, thus, actually knew of the risks of harm to the Children as a result of the above-described conditions of confinement at the CCJDC facility and Defendants' policies, practices, acts, and omissions.

113. Despite actual knowledge of the obvious risks of harm to the Children at CCJDC, Defendants have disregarded these excessive risks to the health and safety of the Children and have failed to rectify the conditions of confinement at the CCJDC facility or to make preventative changes to their policies and practices.

114. As a result, Defendants' have acted with deliberate indifference to the excessive risk of harm to the Children as a result of the conditions of confinement at the CCJDC facility and Defendants' policies, practices, acts, and omissions complained of herein.

115. CCJDC Defendants have used excessive force in various forms, including but not limited to: solitary confinement in a converted mop closet without a bed or toilet and in cells for

extended periods of time without regard to the need for protection from self-harm or the need to protect others or property, use of tasers, guns loaded with rubber bullets, guns loaded with bean bags, restraint chairs, use of the wet cell, and corporal punishment in violation of the Eighth Amendment.

116.     Consequently, Plaintiff is entitled to a declaratory judgment of this Court that the CCJDC Defendants have violated the constitutional rights of the Children at CCJDC as guaranteed by the First, Eighth, and Fourteenth Amendments to the United States Constitution and related sections of the South Carolina Constitution.

### THIRD CAUSE OF ACTION
(Declaratory Judgment: Violation of the ADA, Rehabilitation Act, and IDEA as to All Defendants)

117.     The preceding paragraphs are incorporated herein as if re-stated verbatim.

118.     Defendants' policies, practices, acts, and omissions complained of herein, and in particular Defendants' failure to provide adequate educational services, deprive the Children of their rights under the ADA, the Rehabilitation Act, the IDEA, regulations promulgated under these Acts, and state law.

119.     Consequently, Plaintiff is entitled to a declaratory judgment of this Court declaring that Defendants have violated the statutory rights of the Children at CCJDC under the ADA, Rehabilitation Act, the IDEA, regulations promulgated under these Acts, and state law.

### FOURTH CAUSE OF ACTION
(Declaratory Judgment: Violation of State Statutes and Regulations as to All Defendants)

120.     The preceding paragraphs are incorporated herein as if re-stated verbatim.

121.     Defendants' policies, practices, acts, and omissions complained of herein, and in particular Defendants' failure to provide adequate educational services, deprive the Children at CCJDC of the minimum education required by state law.

122. The conditions of confinement at the CCJDC facility and Defendants' policies, practices, acts, and omissions complained of herein violate South Carolina law governing the detention of juveniles, including South Carolina Code Section 63-19-360.

123. Consequently, Plaintiff is entitled to a declaratory judgment of this Court declaring that Defendants have failed to provide the Children at CCJDC with the minimum education required by state law and have violated the minimum standards applicable to the pretrial detention of juveniles under state law.

## FIFTH CAUSE OF ACTION
(Preliminary and Permanent Injunctive Relief; 42 U.S.C. § 1983 as to All Defendants)

124. The preceding paragraphs are incorporated herein as if re-stated verbatim.

125. The conditions of confinement at the CCJDC facility and Defendants' policies, practices, acts, and omissions complained of herein have deprived the Children at CCJDC of their respective rights, privileges, and immunities secured by the Constitution and laws of the United States.

126. As a result of these deprivations, the Children at CCJDC are likely to suffer irreparable harm in the absence of injunctive relief requested below.

127. The balance of equities favors the entry of the requested injunctive relief.

128. The requested injunctive relief is in the public interest.

129. Plaintiff is likely to succeed on the merits of its claims.

130. Consequently, Plaintiff is entitled to an order by this Court preliminarily and permanently enjoining the Defendants from operating the CCJDC in such a way as to deprive the Children at CCJDC of their constitutional and statutory rights as set out more fully below in the Prayer for Relief.

## SIXTH CAUSE OF ACTION
(Attorneys' and Experts' Fees; 42 U.S.C. § 1988(b) & (c) as to All Defendants)

131.    The preceding paragraphs are incorporated herein as if re-stated verbatim.

132.    Upon prevailing on the preceding claims, Plaintiff should be awarded its reasonable attorneys' fees, including experts' fees, as part of the costs of the action.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully prays that this Court:

A. Assume jurisdiction over this action;

B. Issue a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202, 42 U.S.C. § 1983, and Rule 57 of the Federal Rules of Civil Procedure, declaring that the conditions of confinement at the CCJDC facility and the policies, practices, acts, and omissions complained of herein:

    i.    constitute punishment and subject the Children to denial of substantive and procedural due process, in violation of their constitutional rights under the Fourteenth Amendment to the United States Constitution and related sections of the South Carolina Constitution;

    ii.    are the result of Defendants' deliberate indifference to an excessive risk of harm to the Children in violation of the Eighth and Fourteenth Amendments to the United States Constitution and related sections of the South Carolina Constitution;

    iii.    deprive the Children of their property interest in receiving the minimum education required by state law in violation of the Fourteenth Amendment to the United States Constitution and related sections of the South Carolina Constitution;

    iv.    are a substantial departure from accepted professional judgment, standards, and policies, and thereby subject the Children to denial of due process of law, in

violation of the Children's constitutional rights under the Eighth and Fourteenth Amendments to the United States Constitution and related sections of the South Carolina Constitution;

v. deprive the Children of their rights under the ADA, the Rehabilitation Act, the IDEA, and state education law;

vi. deprive the Children of their rights under South Carolina law governing the detention of juveniles, including South Carolina Code Section 63-19-360.

C. Issue preliminary and permanent injunctions restraining and prohibiting Defendants from confining any Children at CCJDC facilities unless and until Defendants provide all of the following:

i. Immediately cease and desist from the routine and unconstitutional practice of placing the Children in solitary confinement and/or lockdown as punishment.

ii. Immediately cease and desist from placing Children in the "wet cell" or locking Children either alone or with other Children in any room or cell which does not have natural light, an operable toilet, an operable sink, and a bed.

iii. Immediately cease and desist from confining Children in their cell for more than ten (10) hours per day unless the Child has been temporarily assigned to separation for safety or disciplinary reasons.

iv. Immediately and as a preliminary injunctive measure, cease and desist from placing residents of CCJDC in a restraint chair except by order of the CCJDC manager or designee for the sole purpose of preventing self-harm under the following circumstances:

i. Such an order is issued by the CCJDC manager or designee who has had no involvement in the underlying incident that gave rise to the order.

ii. The manager or designee conducts an examination of the resident and makes a determination that the resident poses a material threat of self-harm and immediately documents that finding.

iii. After being placed in the restraint chair, the resident shall be monitored continuously and asked about his or her condition at frequent intervals.

iv. The resident shall be released from the restraint chair as soon as the resident demonstrates he or she has regained a reasonable degree of control over his or her behavior.

v. Under no circumstances shall the resident be confined in the restraint chair for more than 60 minutes. If, after 60 minutes the resident continues to pose a material threat of self-harm, then an in-person examination by a psychiatrist or a LMHP under the direction of a psychiatrist will be provided and treatment will be provided pursuant to the direction of the psychiatrist or LMHP under his/her direction.

vi. Upon release from the restraint chair, the resident shall be examined immediately by an LMHP or medical provider.

vii. The restraint chair shall never be used to punish or discipline a resident.

v. On a permanent basis, cease and desist all use of the restraint chair.

vi. Immediately cease and desist from placing Children in any other form of bodily restraint except as a security precaution during a transfer or temporary emergency. Restraints shall not be used on Children locked in a cell unless on a temporary

emergency basis to prevent self-harm or harm to others. Restraints should never be used as punishment or discipline.

vii. Allow each Child, except those temporarily placed in segregation for safety or disciplinary reasons, a minimum of one (1) hour per day of outdoor recreation and large-muscle exercise (weather permitting) in an area measuring the greater of: (a) at least fifty (50) by thirty (30) feet; (b) 750 square feet of unencumbered space with none of the dimensions less than fifteen (15) feet; (c) or fifteen (15) square feet per Child for the maximum number of Children who are expected to use the area at one time. If weather conditions do not allow for outdoor recreation or exercise, the Children shall be afforded the same amount of time for indoor recreation and exercise.

viii. Perform medical, dental, and mental health screening of all Children, excluding intrasystem transfers, immediately upon admission to the facility with the findings recorded, including inquiry into the Child's current illnesses and health problems, mental health issues, disabilities, prescribed medications, and any ongoing medical or mental health treatment or counseling.

ix. Confirm any previously prescribed medical or mental health treatments and prescribed medications for each Child within twenty-four (24) hours of admission to the facility.

x. Provide Children with their previously prescribed medical or mental health treatments and prescribed medications promptly and as prescribed commencing within twenty-four (24) hours of admission to the facility. Medications are to be administered by a qualified health care professional.

xi.     Have each Child requiring medical or mental health treatment and/or prescribed medications evaluated and assessed by an appropriate medical professional and/or licensed mental health professional within forty-eight (48) hours of admission to the facility and at least once per week thereafter to determine any needed modifications to such treatments or medications during the Child's confinement at CCJDC.

xii.     Provide Children with a minimum of thirty (30) hours of grade-level and individually appropriate classroom or individualized instruction time per week in accordance with the minimum education program standards set out by the State Board of Education.

xiii.     CCJDC must provide notice by email to CCSD within 12 hours after a child is placed in detention following his or her initial hearing in family court. CCSD is to commence instruction based on school coursework, assignments, books, and tests from their home school within seventy-two (72) hours of receiving such notice and daily thereafter so that each resident has the opportunity to stay up-to-date with his or her school work to prevent falling behind while at CCJDC. CCJDC must also provide CCSD notice of release of a child from detention.

xiv.     Follow all requirements of the Americans with Disabilities Act (ADA), Section 504 of the Rehabilitation Act of 1973 (Section 504), and the Individuals with Disabilities Education Act including the provision of a Free Appropriate Public Education (FAPE), conduct "appropriate evaluations" of Children suspected of having a disability, follow established individualized education plans (IEPs) for Children who receive special education, or in the case of a Child detained for

months, establish an IEP if appropriate and needed, guarantee placement in the Least Restrictive Environment (LRE) where possible, encourage parental participation in placement decisions, and follow procedurally required safeguards.

   xv.    Adhere to all minimum educational program requirements set forth by state statute and regulations including S.C. Code Ann. Regs. 43-232 & 234.

   xvi.    Establish a clearly defined disciplinary system that ensures Children understand when, why, and how they have been disciplined, affords each Child notice and an opportunity to contest the disciplinary action prior to its enforcement, and ensures that any punishment for a disciplinary violation is documented.

   xvii.    Enjoin CCJDC from accepting into the facility any Children from counties other than Charleston.

D. Order Defendants to develop and implement a comprehensive plan for the correction of the unlawful policies, practices, acts, and omissions complained of herein and to submit this plan to the Court and to the attorneys for the Plaintiff for review;

E. Appoint a monitor to oversee implementation of this injunctive relief;

F. Retain jurisdiction over Defendants until such time as the Court is satisfied that Defendants' unlawful policies, practices, acts and omissions complained of herein no longer exist and will not recur;

G. Award Plaintiff the costs of this lawsuit and its reasonable attorneys' fees and experts' fees; and

H. Order such additional relief as this Court may deem just and proper.

[SIGNATURE BLOCK ON FOLLOWING PAGE]

**NELSON MULLINS RILEY & SCARBOROUGH LLP**

By: s/ROBERT H. BRUNSON

Robert H. Brunson
Federal Bar No. 4971
E-Mail: robert.brunson@nelsonmullins.com
Patrick C. Wooten
Federal Bar No. 10399
E-Mail: patrick.wooten@nelsonmullins.com
Andrew Connor
Federal Bar No. 11191
E-Mail: andrew.connor@nelsonmullins.com
151 Meeting Street / Sixth Floor
Post Office Box 1806 (29402-1806)
Charleston, SC  29401-2239
(843) 853-5200

Stuart Andrews
Federal Bar No. 1099
E-Mail: stuart.andrews@nelsonmullins.com
1320 Main Street / 17th Floor
Post Office Box 11070 (29211-1070)
Columbia, SC 29201
(803) 799-2000

-and-

Annie Elizabeth Andrews
Federal Bar No. 13134
E-Mail: andrewsanniee@gmail.com
Post Office Box 957
Mount Pleasant, SC 29465
(843) 822-5329

*Attorneys for Plaintiff*

Charleston, South Carolina
July 25, 2020