IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF SOUTH CAROLINA

CHARLESTON DIVISION

| | |
|---|---|
| Protection and Advocacy for People with Disabilities, Inc., <br><br> Plaintiff, <br><br> vs. <br><br> James Alton Cannon, Jr., in his official capacity as Charleston County Sheriff, Mitch Lucas, in his official capacity as Assistant Charleston County Sheriff, Willis Beatty, in his official capacity as Chief Deputy of the Charleston County Sheriff's Office, and Charleston County School District, <br><br> Defendants. | C.A. No. 2:20-cv-02738-DCN <br><br> **DEFENDANT CHARLESTON COUNTY SCHOOL DISTRICT'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS** |

## I.     INTRODUCTION

Defendant Charleston County School District ("District") submits this memorandum in support of its motion to dismiss the complaint of Plaintiff Protection and Advocacy for People with Disabilities, Inc. ("P&A"). The District's motion is made under Rules 12(b)(1) and (6), Fed. R. Civ. P., on the grounds that Plaintiff lacks standing to bring its claims in this court and that the court should not exercise jurisdiction over the claims because Plaintiff has not exhausted available administrative remedies. The District further contends that Plaintiff's Fourth Cause of Action alleging violations of State law and regulations fails to state a claim for relief.

This civil action in regard to the District presents claims under federal law and state law challenging the adequacy of the District's educational program to children in pre-trial detention at the Charleston County Juvenile Detention Center ("CCJDC"). The District's responsibilities

at the CCJDC under state law are limited to educational services and do not otherwise include conditions of detention. Complaint, ¶ 16; S.C. Code of Laws Ann. § 63-19-360. P&A alleges it is a private, not-for-profit South Carolina corporation established as a protection and advocacy organization for the State of South Carolina and charged by the state and federal law to protect and advocate for the rights of people with disabilities in South Carolina. Complaint, ¶ 12; S.C. Code Ann. § 43-33-310. P&A seeks a declaratory judgment and expansive mandatory injunctive relief.

## II.     COMPLAINT

This civil action is brought by P&A "on behalf of the Children, asserting associational and organizational standing, seeks declaratory and injunctive relief against Defendants on the grounds that Defendants have deprived the Children of the rights secured to them by the Eighth and Fourteenth Amendments of the United States Constitution, as enforced by 42 U.S.C. § 1983, the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12182 et. seq., the Rehabilitation Act, 29 U.S.C. §§ 794 *et seq*., the Individuals with Disabilities Education Act ("IDEA"), Title 20, United States Code§§ 1401 *et seq*., and relevant provisions of federal and state law." Complaint, ¶ 5.

Specifically in regard to educational services, the complaint alleges a laundry list of deficiencies in the District's program at the CCJDC. These deficiencies allegedly have the effect of denying students at the CCJDC access to educational services, including special education services mandated by state and federal law. Complaint, ¶ 84. The alleged deficiencies include failing to:

(a)     Meet the classroom instructional mandates of state law.

(b)     Provide an adequate number of teachers.

(c)     Provide adequately trained teachers.

(d)     Provide age appropriate education for each Child.

(e) Appropriately divide the Children into separate classes rather than grouping Children from different grade levels together.

(f) Provide a process for obtaining Children's previous education records.

(g) Maintain appropriate records of school work performed at the CCJDC and provide a report of school work to the Children's parents, guardians, or home school.

(h) Provide access to guidance services necessary for the Children's achievement of educational and career planning goals required as a part of their rehabilitation and treatment.

(i) Provide disabled students with a free and appropriate education, including related and transition services, in accordance with the IDEA and state statutory requirements.

Complaint, ¶ 85; and

(a) Adequately identify, assess, or evaluate Children to determine whether they have special needs and how such special needs can be met.

(b) Follow established individualized education plans (IEPs) for Children who receive special education, or in the case of a Child detained for months, establish an IEP if appropriate and needed.

(c) Provide related services, such as speech therapy and psychological therapy, to Children with disabilities who need such services to benefit from their education.

(d) Obtain and/or provide adequate information from schools that Children attend prior to their detention at the CCJDC to properly

    ascertain the Children's special needs.

(e) Employ adequately trained, certified special education teachers to provide special education services to Children who need these services.

Complaint, ¶ 86.

Accordingly, P&A's complaint broadly alleges the District has failed to provide various educational services to both disabled and non-disabled students at the CCJDC. However, P&A does not contend that the District refuses or fails to offer a comprehensive educational program at the CCJDC. See Exhibit 1 hereto, Affidavit of Jennifer Coker.

### III. P&A Lacks Article III Standing

P&A purports to prosecute the claims alleged in the complaint in an associational and representative capacity. However, P&A does not have standing to pursue these claims. P&A is a private, nonprofit corporation designated as South Carolina's protection and advocacy system for people with disabilities. The General Assembly has prescribed certain powers and duties for P&A. S.C. Code Ann. § 43-33-310 to -400. These powers and duties are statutorily limited to protection and advocacy functions for the developmentally disabled and all other disabled citizens of South Carolina. *Protection and Advocacy for People with Disabilities, Inc. v. Buscemi*, 789 S.E.2d 756, 759 (S.C. App. 2016). Whether a party has standing to bring suit is a question of law, and the party invoking federal jurisdiction has the burden of establishing that it meets the requirements of standing. The standing requirements under Article III of the Constitution are injury in fact, a causal connection between the injury and defendant's conduct, and likely redressability through a favorable decision. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561-62 (1992). Here, P&A does not allege its own injury, but rather that of children it purports to represent. An organization may have associational or representative standing to bring suit on behalf of its members, when its members would otherwise have standing to sue in their

4

own right, the interests it seeks to protect are germane to the organization's purpose, and neither the claims asserted, nor relief requested, requires the participation of individual members in the lawsuit. *Hunt v. Washington State Apple Adver. Comm'n*., 432 U.S. 333, 343 (1977).

However, even when these conditions for standing are met, "[p]rudential concerns often bar a third party from suing on behalf of others who choose not to sue. *Parent/Professional Advocacy League v. City of Springfield*, 943 F.3d 13, 33 (1st Cir. 2019); *United Food & Commercial Workers Union v. Brown Group, Inc*., 517 U.S. 544 (1996); *Hunt*, 432 U.S. at 343.

From the outset, P&A cannot represent or bring claims on behalf of persons not included in its statutory mandate or "membership." P&A cannot purport to represent the interests of non-disabled students, and the only interests it seeks to protect germane to the organization's purpose are the interests of disabled children in the custody of the CCJDC. *See*, *e.g.*, *Warth v. Seldin*, 422 U.S. 490, 515 (1975); *Washington Legal Foundation v. Leavitt*, 477 F.Supp.2d 202 (D.D.C. 2007). Consequently, P&A's claims alleging various violations of the Fourteenth Amendment, ADA, § 504, and the IDEA are limited to those unspecified number of students with disabilities at the CCJDC. Further, the alleged violations range over a variety of situations– from loss of educational credit, to lack of communication with parents and failure to evaluate, to failure to implement services specified in IEPs, i.e., from failure to properly identify students as disabled, to failure to properly develop and implement an IEP. Moreover, none of the students at issue have exhausted their available administrative remedies under the IDEA.

Here, at a minimum, prudential concerns bar P&A from having standing to sue the District on behalf of potentially hundreds of students with disabilities. The scale and complexity of the alleged claims concerning many students requires participation of numerous students. Because of the breadth of the alleged claims, adjudication of the education related claims would turn on facts specific to each student. For example, under the IDEA alone, there are broadly three different kinds of claims alleged: A school district's failure to evaluate or identify a

student as a student with a disability.  *See, e.g., Sellers v. School Bd. of City of Manassas* 960 F.Supp. 1006 (E.D. Vir. 1997).  A school district's failure to properly develop an IEP for a student.  *See, e.g.*, *E.R. v. Spring Branch Indept. School District,* 909 F.3d 754 (5th Cir. 2018).  And third, a school district's failure to substantially implement an IEP, or unilaterally changing a student's IEP placement, including by suspending a student for more than ten school days.  *See, e.g. Houston Independent School District*, 200 F.3d 341, 349 (5th Cir. 2000) ("failure to provide all the services and modifications outlined in an IEP does not constitute a per se violation of the IDEA."); *M.M. v. Special School District No. 1*, 512 F.3d 455, 464 (8th Cir. 2008) (failure to provide student with educational services during short-term suspensions did not violate IDEA).  Each of these types of IDEA claims have been alleged by P&A.  Under these circumstances, "[e]fficient and successful judicial resolution of the claims would thus require participation and cooperation by numerous students and parents.  And, as we stated, representative standing is inappropriate where such participation is necessary." *Parent/Professional Advocacy League v. City of Springfield,* 934 F.3d 13, 35 (1st Cir. 2019); *see also, Tennessee Protection and Advocacy Inc. v. Bd. of Educ. of Putnam County,* 24 F.Supp.2d 808, 816 (M.D. Tenn. 1998).  Consequently, the need for individual student and parent participation in the adjudication of P&A's claims makes its representative standing inappropriate.

Additionally, P&A's standing is not proper because the students P&A purport to represent in this action have failed to exhaust the IDEA's administrative procedures and remedies.  The scores and perhaps hundreds of students P&A claims to represent have not satisfied the IDEA's exhaustion requirement.

The IDEA requires that, in exchange for federal special education-related funding, states provide students with qualifying disabilities a free appropriate public education (FAPE), which includes offering eligible enrolled students an IEP.  The IDEA further requires an administrative process and equitable remedies for parents who are dissatisfied with their child's IEP, or lack

thereof. *Harper v. Carbon County School District*, 105 F.Supp.3d 1317, 1322 (D. Utah 2015). Before a plaintiff can bring an education related claim under the Rehabilitation Act, ADA, or IDEA they must exhaust administrative remedies under the IDEA.  20 U.S.C. § 1415(1); *Ellenburg v. New Mexico Military Inst.*, 478 F.3d 1262, 1267 (10th Cir. 2007); *Paul G. v. Monterey Peninsula Unified School Dist.,* 933 F.3d 1096 (9th Cir. 2019); *K.I. v. Durham Public Schools Bd. of Educ.*, No. 1:19cv857, 2020 WL 3512213 (M.D. N.C. June 29, 2020).  Where, as here, IDEA administrative remedies have not been exhausted, representative standing is not proper.  "Otherwise, associational standing in this type of suit would be inconsistent with the Congressional requirements of exhaustion in the IDEA, 20 U.S.C. § 1415(1), and indeed an easy way to circumvent it."  *Parent/Professional Advocacy League*, 934 F.3d at 34; *Protection & Advocacy, Inc. v. Murphy*, No. 90-C-569, 1992 WL 59100 (N.D. Ill. March 16, 1992); *see also*, 42 U.S.C. § 10807 ("Prior to instituting any legal action in Federal or State court on behalf of a individual with mental illness, an eligible system,… shall exhaust in a timely manner all administrative remedies where appropriate.").  Consequently, P&A lacks standing to pursue the claims alleged in the complaint, and the complaint, therefore, should be dismissed.

### IV.     P&A Has Not Exhausted Administrative Remedies

P&A's complaint should be dismissed for failing to exhaust available administrative remedies.  In addition to disability rights related claims under the Rehabilitation Act and the ADA, P&A alleges the District has violated the IDEA.  The IDEA is a comprehensive statute that provides procedural rights to parents to ensure their participation in educational decisions concerning their children.  *Sellers v. School Board of City of Manassas*, 141 F.3d 524, 527 (4th Cir. 1998.).  Parent concerns and complaints must be heard in the first instance by the state or local educational agency.  20 U.S.C. § 1415(f); *MM v. School District of Greenville County*, 303 F.3d 523, 535 (4th Cir. 2002)  The IDEA expressly further mandates exhaustion of claims under "other Federal laws protecting the rights of children with disabilities… seeking relief that is also

available under [the IDEA]." 20 U.S.C. 1415(1); *McMillen v. New Caney Independent School District*, 939 F.3d 640, 644-46 (5th Cir. 2019); *K.M. v. Board of Education of Montgomery County,* CA No. PX-17-2759, 2019 WL 330194 (D. Md. January 25, 2019).

Neither P&A, nor the students with disabilities it purports to represent in this case, have exhausted administrative remedies under the IDEA. By not exhausting administrative remedies, P&A is undermining the very purposes of the IDEA's exhaustion requirement. *Learning Disabilities Ass'n of Maryland, Inc. v. Board of Education of Baltimore County*, 837 F.Supp. 717, 722 (D. Md. 1993). The IDEA's exhaustion requirement is not merely a pleading hurdle, but rather it serves the important purpose of allowing states to use their special expertise to resolve educational disputes. *K.M.,* 2019 WL 330194 at *6; *E.L. v. Chapel Hill-Carrboro Board of Education,* 773 F.3d 509, 514 (4th Cir. 2014).

Importantly, the IDEA's exhaustion requirement is not obviated by raising numerous alleged violations, purporting to represent numerous students, or alleging policy violations. *See Learning Disabilities Ass'n of Maryland, Inc.,* 837 F.Supp. at 724; *Parent/Professional Advocacy League*, 934 F.3d at 27-28 (exhaustion not waived unless uniform system-wide policy enforced at the highest administrative level). Here, P&A's claims involve a wide variety of various and highly individualized issues arising under the IDEA, and not a uniform, system-wide policy enforced at the highest administrative level, or a pure matter of law. Accordingly, the IDEA's exhaustion requirement should not be waived with respect to P&A's claims against the District.

## V.     P&A's Fourth Cause of Action Fails to State a Claim

P&A's Fourth Cause of Action (Complaint, ¶¶ 120-123) appears to allege the District has failed to offer students a minimally adequate education required under the South Carolina Constitution. *Abbeville County School District v. State of South Carolina*, 515 S.E.2d 535, 540 (Sup.Ct. 1999). In *Abbeville County School District*, the South Carolina Supreme Court

established that the minimum education required by state law comprised the opportunity to acquire:

    1) the ability to read, write, and speak the English language, and knowledge of mathematics and physical science;
    2) a fundamental knowledge of economic, social, and political systems, and of history and governmental processes; and
    3) academic and vocational skills.

*Id.*, 515 S.E.2d at 540-41. The allegations of P&A's complaint simply do not state a claim that this minimum of educational opportunity has not been met by the District. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* P&A's general and conclusory allegations that the District failed to provide adequate educational services (Complaint, ¶ 121), provides no "factual content" or plausibility to the broad claim that the District's educational program does not offer minimally adequate educational opportunities, especially in regard to students in the short-term custody of the CCJDC.

    Furthermore, in the *Abbeville* decision, the South Carolina Supreme Court emphasized, that in establishing a minimal standard for a constitutionally adequate education, "[w]e do not intend by this opinion to suggest to any party that we will usurp the authority of that [legislative] branch to determine the way in which educational opportunities are delivered to the children of our State." *Abbeville County School District,* 515 S.E.2d at 541. Indeed, such programmatic decisions are recognized as being best left to the legislature and school boards, and these operational and programmatic decisions have not generally given rise to property interests or privately enforceable educational rights. *See Id.*, 515 S.E.2d at 539; *Wharton v. Abbeville School*

*District No. 60*, 608 F.Supp. 70 (D.S.C. 1984); *Palms v. School District of Greenville County*, 758 S.E.2d 919 (S.C. App. 2015); *Doe v. Board of Trustees, Richland School District Two,* CA No. 2015-UP-314, 2015 WL 3885922 (per curium, unpublished opinion) (S.C. App. 2015); *Sellers v. School Board of the City of Manassass*, 960 F.Supp. 1006, 1012 (E.D. Vir. 1997); *Hendricks v. Clemson University*, 578 S.E.2d 771 (Sup. Ct. 2003). Accordingly, P&A's Fourth Cause of Action should be dismissed.

## VI.  Conclusion

For the foregoing reasons, the District respectfully asks the Court to decline P&A's invitation to assume the role of an IDEA administrative hearing officer and school board member. The clear requirements of Article III standing and the IDEA require P&A's claims against the District be dismissed and the individual concerns of students expressed in the complaint be properly addressed through District and State administrative procedures.

Respectfully submitted,

HALLIGAN MAHONEY WILLIAMS SMITH
FAWLEY & REAGLE, PA

By:     s/John M. Reagle
John M. Reagle, Fed. I.D. No. 7723
jreagle@hmwlegal.com

Dwayne T. Mazyck, Fed. I.D. No. 9026
dmazyck@hmwlegal.com

P.O. Box 11367
Columbia, South Carolina 29211
(803) 254-4035

Attorneys for Defendant Charleston County School District

August 18, 2020
Columbia, South Carolina