IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| Protection and Advocacy for People with Disabilities, Inc., <br><br> Plaintiff, <br><br> v. <br><br> James Alton Cannon, Jr., in his official capacity as Charleston County Sheriff, Mitch Lucas, in his official capacity as Assistant Charleston County Sheriff, Willis Beatty, in his official capacity as Chief Deputy of Charleston County Sheriff's Office, and Charleston County School District, <br><br> Defendants. | C/A No. 2:20-cv-02738-DCN <br><br><br> **MEMORANDUM IN SUPPORT OF CCSO DEFENDANTS' MOTION TO DISMISS** |

COME NOW Defendants Sheriff James Alton Cannon, Jr., Assistant Sheriff Mitch Lucas, and Chief Deputy Willis Beatty, ("CCSO Defendants"), and submit this memorandum in support of their motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(1).

## **INTRODUCTION**

Plaintiff, Protection and Advocacy for People with Disabilities, Inc. ("P&A"), was established pursuant to federal and state law as the statewide protection and advocacy system for South Carolina which provides protection and advocacy services for individuals with disabilities, including children with a mental health disability. S.C. Code Ann. § 43-33-310 to -430. P&A brought this action on behalf of juveniles housed at the Charleston County Juvenile Detention Center ("CCJDC") seeking expansive declaratory and injunctive relief regarding the conditions of confinement at CCJDC. CCSO Defendants submit that P&A lacks organizational and associational standing to sue in this matter.

## STANDARD OF REVIEW

Generally, challenges to standing are addressed under Rule 12(b)(1) for lack of subject matter jurisdiction. *CGM, LLC v. BellSouth Telecomms. Inc.*, 664 F.3d 46, 52 (4th Cir. 2011). When resolving a motion under Rule 12(b)(1), "'the district court is to regard the pleadings as mere evidence on the issue, and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment.'" *Evans v. B.F. Perkins Co., a Div. of Standex Int'l Corp.*, 166 F.3d 642, 647 (4th Cir. 1999) (quoting *Richmond, Fredericksburg & Potomac R.R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991)). Ultimately, the plaintiff bears the burden of "clearly ... alleg[ing] facts demonstrating that [it] is a proper party to invoke judicial resolution of the dispute." *Warth v. Seldin*, 422 U.S. 490, 518 (1975).

## STANDING

"[T]o satisfy Article III's standing requirements, a plaintiff must show (1) that it has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180-81 (2000). "For an injury to be 'particularized,' it must affect the plaintiff in a personal and individual way." *Spokeo, Inc. v. Robins*, ___ U.S. ___, 136 S.Ct. 1540, 1548, 194 L.Ed.2d 635 (2016) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 n.1, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992)) (internal quotation marks omitted). Additionally, a "'concrete' injury must be '*de facto*'; that is, it must actually exist." *Id.* Furthermore, to have standing, "the plaintiff must have suffered an injury or threat that is credible, not imaginary or speculative. *Cooksey v. Futrell*, 721 F.3d 226, 235 (4th Cir. 2013) (quoting *Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289,

298, 99 S.Ct. 2301, 60 L.Ed.2d 895 (1979)) (internal quotation marks omitted).  "The standing requirement must be satisfied by individual and organizational plaintiffs alike." *White Tail Park, Inc. v. Stroube*, 413 F.3d 451, 458 (4th Cir. 2005).

Associations, such as P&A, can allege standing based upon two distinct theories. First, the association "may have standing in its own right to seek judicial relief from injury to itself and to vindicate whatever rights and immunities the association itself may enjoy." *Warth v. Seldin*, 422 U.S. 490, 511 (1975). Second, the association may have standing as the representative of its members who have been harmed. *Id. See also Hunt v. Washington State Apple Advertising Comm'n*, 432 U.S. 333 (1977).

CCSO Defendants will first address associational standing in Section I, and then organizational standing in Section II, *infra*.

## I.     ASSOCIATIONAL STANDING

An organization seeking to assert associational standing as the representative of its members must establish that: "(1) its members would otherwise have standing to sue in their own right; (2) the interests it seeks to protect are germane to the organization's purpose; and (3) neither the claim asserted nor the relief requested requires the participation in the lawsuit of each of the individual members." *Hunt v. Washington State Apple Advert. Comm'n*, 432 U.S. 333, 343 (1977). The third prong of the *Hunt* test is not a constitutional requirement, but a matter for prudential consideration. *United Food & Commercial Workers Union Local 751 v. Brown Group, Inc.*, 517 U.S. 544, 555 (1996).

In order for an organization without traditional membership, such as P&A, to meet *Hunt*'s first requirement, the Court must determine if the organization's constituents possess "indicia of membership" in the organization. *Hunt*, 432 U.S. at 344. Factors to consider are whether the

individuals in an organization elect the organization's leadership, serve as the organization's leadership, and finance the organization's activities, including the costs of litigation. *Id.* Ultimately, for an organization to possess the "indicia of membership," it must "provide[ ] the means by which [the individuals in an organization] express their collective views and protect their collective interests." *Id.* at 345. If the organization has no "members," then there can be no associational standing.

Plaintiff P&A is designated under the Protection and Advocacy for Individuals with Mental Illness Act ("PAIMI"), 42 U.S.C. § 10801, *et seq.*, as the protection and advocacy system for individuals with mental health disabilities in South Carolina. When a PAIMI system, such as Plaintiff P&A, sues on behalf of individuals it protects, when those individuals are not themselves plaintiffs, the federal courts of appeals are divided as to whether they are sufficiently similar to traditional membership organizations to meet the first requirement for associational standing under *Hunt*.

For example, in *Ass'n for Retarded Citizens of Dallas v. Dallas Cnty. Mental Health & Mental Retardation Ctr. Bd. of Trustees*, the Fifth Circuit held that individuals with disabilities are not "members" of PAIMI systems because "[t]he organization bears no relationship to traditional membership groups because most of its 'clients'—handicapped and disabled people—are unable to participate in and guide the organization's efforts." 19 F.3d 241, 244 (5th Cir. 1994). The Fifth Circuit thus held that the PAIMI system did not have associational standing.

In 2007, the Eighth Circuit joined the Fifth Circuit in denying associational standing to a PAIMI system. *Missouri Protection and Advocacy Servs., Inc. v. Carnahan*, 499 F.3d 803, 810 (8th Cir. 2007). Relying on the "indicia-of-membership" portion of the *Hunt* opinion and the holding in *Dallas County*, the court concluded that the P&A failed to meet the first prong of the

associational standing test because individuals with disabilities neither had the power to elect the leadership of the P&A nor financed the P&A's activities. *Id.* The Eighth Circuit went on to conclude that even if the P&A had satisfied the first associational standing requirement, it would have failed to satisfy the third because the participation of individual constituents with specific claims was required. *Id.*

As was the case in *Dallas County* and *Carnahan*, CCSO Defendants submit that the constituents for whom Plaintiff P&A is bringing suit do not bear any indicia of membership in P&A, and therefore P&A lacks associational standing to sue on their behalf. Even if P&A were to satisfy this Court that its constituents bear the required indicia of membership, CCSO Defendants submit that Plaintiff cannot satisfy *Hunt*'s third associational standing requirement because prudential considerations should bar P&A from bringing suit on behalf of its constituents.

Prudential concerns often bar a third party from suing on behalf of others who choose not to sue. *See, e.g.*, *United Food*, 517 U.S. at 556; *Flast v. Cohen*, 392 U.S. 83, 99 n.20 (1968) ("[A] litigant will ordinarily not be permitted to assert the rights of absent third parties."). Associational standing is inappropriate for prudential reasons, for example, if "the nature of the claim and of the relief sought" requires the participation of individual members. *Hunt*, 432 U.S. at 343. "[A]n organization lacks standing to assert claims of injunctive relief on behalf of its members where the fact and extent of the injury that gives rise to the claims for injunctive relief would require individualized proof." *Jefferson v. Sch. Bd. of Norfolk*, No. 2:10-cv-316, 2010 WL 11527350, at *3 (E.D. Va. Nov. 18, 2010) (quoting *Bano v. Union Carbide Corp.*, 361 F.3d 696, 714 (2d Cir. 2004)) (internal quotation marks omitted), *aff'd* 452 Fed. App'x 356 (4th Cir. 2011); *see also Int'l Woodworkers of Am. v. Chesapeake Bay Plywood Corp.*, 659 F.2d 1259, 1267 (4th Cir. 1981) (same).

In *Parent/Professional Advocacy League v. City of Springfield, Mass.*, 934 F.3d 13 (1st Cir. 2019), the First Circuit, citing prudential concerns, held that a PAIMI system lacked associational standing because the PAIMI system's constituents had failed to exhaust their administrative remedies prior to the PAIMI system bringing suit. 934 F.3d at 34–35. PAIMI specifically requires that "[p]rior to instituting any legal action in a Federal or State court on behalf of an individual with mental illness, an eligible [PAIMI system] ... shall exhaust in a timely manner all administrative remedies where appropriate." 42 U.S.C. § 10807(a).

The same prudential concern is at issue in this case: Plaintiff P&A's constituents' failure to exhaust their administrative remedies prior to P&A bringing this suit. This failure to exhaust cuts against standing. The juveniles for whom P&A is seeking to bring suit cannot sue on their own unless and until they exhaust their administrative remedies.

The Prison Litigation Reform Act ("PLRA") requires a prisoner to exhaust their administrative remedies before filing a § 1983 action. 42 U.S.C. § 1997e(a).[1] The PLRA provides, in pertinent part, that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." *Id.* PLRA's exhaustion requirement applies to all inmate suits about prison life. *Porter v. Nussle*, 534 U.S. 516, 532 (2002). There is "no question that exhaustion is mandatory under PLRA and that unexhausted claims cannot be brought in court." *Jones v. Bock*, 549 U.S. 199, 211 (2007) (citing *Porter*, 534 U.S. at 524). The PLRA requires "proper" exhaustion, which means "using all steps that the agency holds out, and doing so properly (so that the agency addresses the issues on the merits)." *Woodford v. Ngo*, 548 U.S. 81, 90 (2006) (quoting *Pozo v. McCaughtry*, 286 F.3d 1022,

---

[1] The provisions of the PLRA apply not only to adult prisoners, but also to children confined in prisons, jails, and juvenile detention facilities. *See* 18 U.S.C. § 3626(g)(3) and (5); 42 U.S.C. § 1997e(h)

1024 (7th Cir. 2002)).  The exhaustion of administrative remedies must occur before a civil action is commenced.  *Porter*, 534 U.S. at 516.  A prisoner may not exhaust their administrative remedies during the pendency of a § 1983 action.  *Germain v. Shearin*, 653 F. App'x 231, 234 (4th Cir. 2016); *French v. Warden*, 442 F. App'x 845, 846 (4th Cir. 2011).

The juveniles for whom P&A is bringing suit cannot sue individually here without PLRA exhaustion, "so there is no clear reason why the [P&A] should be able to essentially press those [juveniles'] claims in the aggregate without that exhaustion.  Put another way, it would not make sense to allow [P&A] to escape the exhaustion requirements for the [juveniles] they are purportedly representing."  *City of Springfield*, 934 F.3d at 34.  Otherwise, associational standing in this type of suit would be inconsistent with- and in fact would undercut- the PLRA's exhaustion requirement by allowing organizations to make an end run around a federal mandate.

In addition to PLRA exhaustion, such is also required under the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1401, *et seq.*  The IDEA details procedures for resolving disputes between parents and schools about the content of an individualized education program ("IEP"). Parents may file a complaint with the appropriate local or state educational agency, 20 U.S.C. § 1415(b)(6), spurring a "[p]reliminary meeting," 20 U.S.C. § 1415(f)(1)(B)(i), which, if unsuccessful in resolving the dispute, leads to a mediation process, 20 U.S.C. § 1415(e), and then ultimately to a formal "due process hearing," 20 U.S.C. § 1415(f)(1)(A).  The general rule is that only after these procedures have been exhausted may parents seek review of IDEA claims in a civil action in state or federal court. *See* 20 U.S.C. § 1415(i)(2)(A).

Co-Defendant Charleston County School District is notified by CCJDC staff upon the admission of a student juvenile and is provided access, facilities, and full cooperation in order to allow CCSD to provide educational services.  With regard to IDEA exhaustion, CCSO Defendants

respectfully crave reference to and incorporate herein the arguments made by co-Defendant CCSD in their Motion to Dismiss. (ECF 18).

Plaintiff P&A seeks to sue on behalf of dozens of juveniles who have not chosen to sue nor have those individuals pursued related administrative remedies. The Complaint concerns multiple aspects of each juvenile's individual experience while housed at CCJDC which raises irreconcilable problems concerning "individualized proof." *Int'l Union, UAW v. Brock*, 477 U.S. 274, 287 (1986) (quoting *Warth v. Seldin*, 422 U.S. 490, 515-16); *see also Bano v. Union Carbide Corp.*, 361 F.3d 696, 714 (2d Cir. 2004) (stating that an "organization lacks standing to assert claims of injunctive relief on behalf of its [constituents] where 'the fact and extent' of the injury that gives rise to the claims for injunctive relief 'would require individualized proof'" (quoting *Warth*, 422 U.S. at 515-16)).

Adjudication of the claims in this case would turn on facts specific to each juvenile, including the unique features of each juvenile's individual and unique disability, needs, services, placement, and experience at CCJDC. For one example, not every juvenile housed at CCJDC has a disability. Additionally, most juveniles are held for less than 72 hours which prevents CCJDC staff from having time to provide many of the services Plaintiff is demanding. Efficient and successful judicial resolution of the claims would thus require the participation and cooperation of dozens of juveniles and their parents. Associational standing is inappropriate where such participation is necessary. In short, PAIMI does not authorize the current plaintiff to bring claims of this scale and complexity on behalf of its constituents. Therefore, CCSO Defendants submit that Plaintiff P&A lacks standing to sue on behalf of the CCJDC juveniles, and requests that this action be dismissed.

## II.   ORGANIZATIONAL STANDING

A group has organizational standing and may bring suit on its own when it "seeks redress for an injury suffered by the organization itself." *White Tail Park, Inc. v. Stroube*, 413 F.3d 451, 458 (4th Cir. 2005). Accordingly, the established individual standing requirements—the requirements that a plaintiff have suffered an injury, that the injury is traceable to the actions of a defendant, and that a court could offer redressability with a favorable ruling—apply to organizations. *Friends of the Earth, Inc. v. Laidlaw Environmental Serv., Inc.*, 528 U.S. 167 (2000).

When a plaintiff "is not [it]self the object of the government action ... [it] challenges, standing is not precluded, but is ordinarily 'substantially more difficult' to establish." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 562 (1992) (citation omitted). To establish independent organizational standing, a plaintiff must demonstrate "concrete and demonstrable injury to the organization's activities ... [rather] than simply a setback to the organization's abstract social interests." *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 379 (1982). "The mere fact that an organization redirects some of its resources to litigation and legal counseling in response to actions or inactions of another party is insufficient to impart standing upon the organization." *Dallas Cnty*, 19 F.3d at 244.

The Complaint alleges only that Plaintiff P&A has brought this action "on behalf of the Children" (ECF 1 ¶ 5) to redress alleged violations of the rights "of the Children" (ECF 1 ¶ 3). Aside from conclusorily alleging that it is asserting organizational standing, Plaintiff P&A makes no allegations indicating that it has itself suffered any injury. Plaintiff only alleges that the juveniles have suffered injury. Absent any allegation of an injury to itself, Plaintiff P&A does not have standing to sue in its own right.

## CONCLUSION

Wherefore, for the foregoing reasons, CCSO Defendants submit that this action should be dismissed pursuant to Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction as Plaintiff does not have standing to sue in its own right or on behalf of the juveniles housed at CCJDC.

           Respectfully submitted,

           s/ *Sandra J. Senn*
           SANDRA J. SENN (Fed. ID No. 05761)
           ROBIN L. JACKSON (Fed. ID No. 07465)
           KEVIN M. DeANTONIO (Fed. ID No. 12269)
           *Senn Legal, LLC*
           Post Office Box 12279
           Charleston, South Carolina 29422
           (843) 556-4045
           (843) 556-4046 (fax)
           Sandy@SennLegal.com
           Robin@SennLegal.com
           Kevin@SennLegal.com

           Attorneys for Defendants James Alton Cannon, Jr., Mitch Lucas, and Willis Beatty

August 18, 2020
Charleston, South Carolina