UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF SOUTH CAROLINA

CHARLESTON DIVISION

| | |
|---|---|
| Protection and Advocacy for People with Disabilities, Inc., )<br>Plaintiff, )<br>)<br>v. )<br>)<br>James Alton Cannon, Jr., in his official capacity as Charleston County Sheriff, Mitch Lucas, in his official capacity as Assistant Charleston County Sheriff, Willis Beatty, in his official capacity as Chief Deputy of Charleston County Sheriff's Office, and Charleston County School District, )<br>Defendants. ) | Civil Action No.: 2:20-cv-02738-DCN<br><br>**STATEMENT OF INTEREST OF THE UNITED STATES OF AMERICA** |

The United States respectfully submits this Statement of Interest to address the rights of incarcerated youth in the juvenile justice system to protection from punitive isolation.[1] The Plaintiff, Protection and Advocacy for People with Disabilities, Inc., filed the above-captioned lawsuit on behalf of children detained at the Charleston County Juvenile Detention Center in Charleston, South Carolina. Among other things, the Plaintiff alleges that the youth held at the facility are subjected to arbitrary and excessive use of isolation. Compl. at 5-24, ECF No. 1. Plaintiff also filed a motion for a preliminary injunction seeking to remedy many unconstitutional conditions, including the use of isolation. Pl.'s Mot. for Prelim. Inj. at 30-33,

---

[1] The practice of confining youth and adult inmates to their cells for extended periods of time is described by a variety of terms, including "solitary confinement," "room confinement," "isolation," "restrictive housing," "segregation," "seclusion," or "lockdown." In this brief we refer to the practice of segregating youth as "isolation."

ECF No. 2. Relevant case law and the requirements of the First Step Act, 18 U.S.C. § 5043, make clear that isolation must be a very limited tool, aimed at ensuring the safety of youth and staff.

Plaintiffs allege that the routine, lengthy isolation of youth at Charleston County Juvenile Detention Center, as well as the use of the Center's disciplinary isolation and "wet cell," violate the youth's Fourteenth Amendment right to Due Process. Compl. at 1-2, ECF No. 1. The United States, through its authority to enforce the constitutional rights of incarcerated juveniles in the criminal and juvenile justice systems, has found that similar conditions violate the Constitution and has worked with jurisdictions to remedy such unconstitutional policies and practices.

## I.    Interest of the United States

The United States files this Statement of Interest pursuant to 28 U.S.C. § 517, which authorizes the Attorney General "to attend to the interests of the United States" in any case pending in federal court.[2] The United States is charged with enforcing the constitutional rights of children in institutions pursuant to the Civil Rights of Institutionalized Persons Act, 42 U.S.C. § 1997 (CRIPA), as well as the Violent Crime Control and Law Enforcement Act 34 U.S.C. § 12601 (Section 12601) (giving Attorney General authority to seek declaratory and injunctive relief for violations of the Constitution or federal law by entities responsible for "the incarceration of juveniles"). The United States has a long history of enforcing children's constitutional rights under CRIPA and Section 12601, including the rights of young people to

---

[2] The full text of 28 U.S.C. § 517 is as follows: "The Solicitor General, or any officer of the Department of Justice, may be sent by the Attorney General to any State or district in the United States to attend to the interests of the United States in a suit pending in a court of the United States, or in a court of a State, or to attend to any other interest of the United States."

2

protection from punitive and excessive isolation. The United States files this Statement of Interest to assist the Court in its analysis of the Defendants' alleged punitive isolation practices.

## II.     Background

The Plaintiff, Protection and Advocacy for People with Disabilities, Inc., filed this complaint on behalf of youth held in the Charleston County Juvenile Detention Center, which is operated by the Charleston County Sheriff's Office. The Plaintiff alleges that young people between the ages of 11 to 16 years old in the facility are subjected to a broad range of unconstitutional conditions, including unsanitary and unsafe conditions, use of excessive force, overcrowding, lack of recreation and programming, inadequate health and mental health care, and inadequate educational services. Pl.'s Mot. for Prelim. Inj. at 2-10.[3] The Plaintiff is seeking a preliminary injunction requiring that the Defendants: cease the use of excessive and inappropriate isolation; limit the utilization of a restraint chair and other mechanical restraints; provide youth with regular recreation time; provide medical and mental health screenings and treatment; provide educational services; and establish a clearly defined disciplinary system. *Id.* at 30-33. The Plaintiff alleges that the Sheriff Office's practices violate the Fourteenth Amendment, Eighth Amendment, the Americans with Disabilities Act, Section 504 of the Rehabilitation Act, and the Individuals with Disabilities Education Act. Compl. at 24-29.

---

[3] In addition to allegations regarding excessive isolation, the plaintiff alleges that the youth are held in moldy, rodent- and insect-infested cells, with inadequate plumbing and sewage drainage. Compl. at 5-6. According to the complaint, youth also are subjected to excessive force, including the use of tasers, pepper spray, and firearms loaded with rubber bullets and beanbags. *Id.* at 12-14. The complaint alleges that Defendants fail to provide adequate educational services, including special education services, and also fail to provide adequate medical and mental health screening and treatment, including failing to provide youth with prescribed medications. *Id.* at 17-22. Plaintiff further alleges that the Defendants fail to provide any structured programming for the youth, including a lack of indoor and outdoor recreational opportunities. *Id.* at 15-16. The United States' silence on other issues presented in this litigation is not intended to express any view or assessment of other aspects of this case.

Since the Plaintiff filed its complaint, the Defendants moved the youth out of the Juvenile Detention Center and into the County's adult detention center.[4]

### III. Discussion

**A. Punitive and Excessive Isolation of Youth is Unconstitutional**

The Plaintiff seeks to enjoin the Defendants from the alleged unconstitutional practices, including placing youth in routine isolation for more than ten hours a day, placing youth in isolation as punishment, and placing youth in a "wet cell" without a sink, toilet, and bed. Compl. at 12-14. Under the Due Process Clause of the Fourteenth Amendment, young people are entitled to protection from punitive isolation. Isolation of young people can be justified only where the placement is reasonably related to a "legitimate government objective." *Cf. Bell v. Wolfish*, 441 U.S. 520, 535-39 (1979) (applying the Fourteenth Amendment to adult pretrial detainees and holding that restrictions on the liberty of an individual not convicted of a crime must be reasonably related to a legitimate government objective); *Santana v. Collazo*, 714 F.2d 1173, 1180-82 (1st Cir. 1983) (applying *Bell* to young people incarcerated and placed in isolation). Restrictions that do not relate to a legitimate goal amount to punishment and are impermissible. *See Bell*, 441 U.S. at 539.

The Plaintiff alleges that youth are placed in restrictive "lockdown" conditions for minor misconduct, including laughing, cursing, and talking out of turn. Compl. at 7-8. Courts have found that isolating youth for similar minor misbehavior or for failing to follow facility rules is not rationally related to a legitimate government objective. *See V.W. ex rel. Williams v. Conway*,

---

[4] *See* Fleming Smith, *Youths Moved to Charleston County Jail as Lawsuit Proceeds over Juvenile Lockup Conditions*, Charleston Post & Courier, Aug. 12, 2020, *available at* https://www.postandcourier.com/news/youths-moved-to-charleston-county-jail-as-lawsuit-proceeds-over-juvenile-lockup-conditions/article_b21b8f02-dca5-11ea-8862-c343e8c428ce.html.

236 F. Supp. 3d 554, 567, 582, 590 (N.D.N.Y. 2017) (granting a preliminary injunction where plaintiffs alleged that they were isolated for minor misbehavior, such as yelling or refusing to stop talking); *R.G. v. Koller*, 415 F. Supp. 2d 1129, 1155 (D. Haw. 2006) ("Courts that have considered [use of isolation on juveniles] have likewise concluded that the use of isolation, except in extreme circumstances, is a violation of Due Process."); *Pena v. N.Y. Div. for Youth*, 419 F. Supp. 203, 210 (S.D.N.Y 1976) (enjoining placement in isolation for punitive reasons); *C.P.X. ex rel. S.P.X. v. Garcia*, No. 4:17-cv-00417-SMR-HCA, 2020 WL 1531126, at *40 (S.D. Iowa March 30, 2020) (finding isolating youth " in response to . . . harmless behavior [that did not threaten the safety or security of students or staff] is not rationally related to the facility's legitimate interest in protecting students and staff"). Such practices therefore are unconstitutional.

Even where a facility isolates a youth for an ostensibly legitimate reason, the conditions in which the facility isolates the youth may be sufficiently excessive or harsh to overcome the legitimate objective and amount to punishment. *Cf. Bell,* 441 U.S. at 539 n.20 (advising that even where there are legitimate objectives offered, some conditions of confinement are so harsh that there could be no other purpose than to punish). For example, use of isolation may be unconstitutional if the period of isolation is excessive. *See Reed v. Palmer*, 906 F.3d 540, 549-51, 544 n.1 (7th Cir. 2018) (two months of nonconsecutive confinement likely stated a claim of excessive isolation); *Santana*, 714 F.2d at 1181 ("[W]hen a juvenile is confined in isolation for an extended period of time . . . it seems likely that the experience accomplishes nothing more than the unnecessary infliction of pain."); Order on Mot. For Prelim. Inj. at 16, *Disability Rights Vt. v. Vt.*, No. 5:19-cv-106 (D. Vt. Aug. 9, 2019), ECF No. 34 (granting plaintiff's request for a preliminary injunction against isolation practices in a treatment facility for youth adjudicated or

charged with delinquency or crimes, finding that "[t]he practice of locking youths in their rooms for days or in some cases weeks on end is unreasonable"); *Koller*, 415 F. Supp. 2d at 1155 (accepting expert opinion that "long-term segregation or isolation of youth is inherently punitive and is well outside the range of accepted professional practices."); *Inmates of Boys' Training School v. Affleck*, 346 F. Supp. 1354, 1362-63, 1365-66 (D.R.I. 1972) (finding Eighth Amendment violation where plaintiff had "twice been put in [] solitary cells, once for two or three days, and once for seven to ten days"). *See also Garcia*, No. 4:17-cv-00417-SMR-HCA, 2020 WL 1531126, at *40 (finding, with respect to youth with mental health diagnoses, when a juvenile facility "employs solitary confinement for more than one hour, its use is excessive in relation to the [facility's] legitimate protection goal.  By that point, the risk of harm to a mentally ill [youth] is so acute – and the situation from which he was removed is so distant – that the [facility's] justification for keeping him in solitary confinement can no longer pass constitutional muster.").

Plaintiff further alleges that the conditions of disciplinary isolation (i.e., "disciplinary lockdown") are especially harsh, as youth are denied the opportunity to leave their cells, including for recreation time or even to shower.  The alleged conditions of the "wet cell," a small, windowless room without a bed or toilet, suggest particularly extreme and possibly unconstitutional conditions and Plaintiff alleges further that some youth in the "wet cell" are placed in a restraint chair.  Without commenting on the merits of plaintiff's claims, we note that courts have held similar conditions to be unconstitutional.  *Cf. Affleck*, 346 F. Supp. at 1365-66 ("To confine a boy without exercise, always indoors, almost always in a small cell, with little in the way of education or reading materials, and virtually no visitors from the outside world is to rot away the health of his body, mind, and spirit."); *Turner v. Palmer*, 84 F. Supp. 3d 880, 884

(S.D. Iowa 2015) (finding plaintiff had sufficiently stated a claim based on allegations a youth was isolated in a small cell, with only a thin mat, no homework, classroom instruction, reading material, outside communication, and could only leave to use the restroom).

### B. The First Step Act Prohibits All But Temporary Isolation of Youth in Response to Immediate Risk of Physical Harm

Recognizing these principles, Congress passed the First Step Act in 2018. The First Step Act includes provisions, entitled "Juvenile solitary confinement," to apply to children in federal custody. 18 U.S.C. § 5043(a)(1). The Act explicitly prohibits the isolation of children "for discipline, punishment, retaliation, or any reason other than as a temporary response to a covered juvenile's behavior [which] poses a serious and immediate risk of physical harm to any individual, including the covered juvenile." 18 U.S.C. § 5043(b)(1).[5] The Act requires that facility staff members attempt to use less restrictive techniques prior to resorting to isolation, including talking with the child in an effort to de-escalate the situation, and allowing a qualified mental health professional to talk to the child. 18 U.S.C. § 5043(b)(2)(A)(i). If facility staff nonetheless decide to place a juvenile in isolation after attempting to use less restrictive measures, the Act requires that the staff member explain to the juvenile the reasons for doing so and that he or she will be released as soon as he or she regains self-control, *i.e.*, is no longer engaging "in behavior that threatens serious and immediate risk of physical harm to himself or herself, or to others." 18 U.S.C. § 5043(b)(2)(A)(ii), (B)(i).

---

[5] Section 5043 of the First Step Act uses the term "room confinement," as opposed to "isolation," but essentially addresses similar conditions of confinement. *See* 18 U.S.C. § 5043(a)(3) (defining "room confinement" as "the involuntary placement of a covered juvenile alone in a cell, room, or other area for any reason.").

The First Step Act prohibits any child being kept in isolation for longer than three hours. 18 U.S.C. § 5043(b)(2)(B).[6]  If a child continues to pose a "serious and immediate risk of physical harm" beyond the maximum period of time in isolation permitted under the Act, the Act requires the facility to transfer the child "to another juvenile facility or internal location where services can be provided to the covered juvenile without relying on room confinement," or "if a qualified mental health professional believes the level of crisis service needed is not currently available, a staff member of the juvenile facility shall initiate a referral to a location that can meet the needs of the covered juvenile."  18 U.S.C. § 5043(b)(2)(C).  Finally, the Act explicitly prohibits "[t]he use of consecutive periods of room confinement to evade the spirit and purpose" of the Act.  18 U.S.C. § 5043(b)(2)(D).

### C. The United States Has Investigated, and Worked with Jurisdictions to Remedy, Isolation Practices Similar to Those Alleged by Plaintiff

The United States has investigated isolation practices in several juvenile institutions across the country.   Most recently, in our investigation of the South Carolina Department of Juvenile Justice (DJJ), we concluded that DJJ "isolates youth frequently as punishment for minor misbehaviors when the youth was not a threat to health or safety," including behaviors such as "showing disrespect, not complying with officers' directions, or using profanity towards officers."  U.S. Department of Justice, Investigation of South Carolina Department of Juvenile Justice's Broad River Road Complex, 9-10 (Feb. 5, 2020), *available at* https://www.justice.gov/crt/page/file/1244381/download.  We also concluded that DJJ isolated youth for unreasonably prolonged stays in isolation, finding that DJJ extended a youth's time in

---

[6] The Act requires that juveniles who pose "a serious and immediate risk of physical harm only to himself or herself" be released no later than 30 minutes, and juveniles who pose "a serious and immediate risk of physical harm to others" be release no later than three hours.  18 U.S.C. § 5043(b)(2)(B)(ii)(I) and (II).

8

isolation based on the behavior that led to youth's placement in isolation, rather than observing the youth's behavior in isolation and assessing whether the youth remained a safety threat. *Id.* at 12. We also found that DJJ repeatedly placed certain youth in isolation, during which time the youth were in cells for 23 hours per day and lacked access to meaningful educational and recreational services and had very little contact with staff members. *Id.* We identified necessary remedial measures to address these alleged violations. The remedial measures include "[e]liminat[ing] the use of isolation for minor misbehavior," and requiring DJJ to "[r]eplace long-term isolation with a short-term cool-down room . . . for youth who are a threat to safety," and "[d]evelop policies to ensure that youth who are placed in the [short-term] cool-down room are returned to the general population as soon as they are no longer a threat to safety." *Id.* at 14.[7]

---

[7] The United States has enforced similar remedies in agreements with other jurisdictions. For example, in *United States v. Leflore County, Mississippi*, the Settlement Agreement permits isolation only when children pose "an immediate threat to themselves or others," and explicitly prohibits disciplinary and punitive isolation. Settlement Agreement at 10-11, *United States v. Leflore County, Mississippi*, No. 4:15-cv-00059-DMB (N.D. Miss. May 13, 2015), ECF No. 3-1, *available at* https://www.justice.gov/sites/default/files/crt/legacy/2015/05/14/leflore_agreement_5-13-15.pdf. The Settlement Agreement in *United States v. Hinds County*, which addressed conditions and treatment of youth and adults in the jail in Hinds County, Mississippi, also requires the County to "[s]pecifically prohibit the use of segregation as a disciplinary sanction for youth," and requires that "[s]egregation may be used on a youth only when the individual's behavior threatens imminent harm to the youth or others." Settlement Agreement at 37, *United States v. Hinds County*, No. 3:16-cv-00489-WHB (S.D. Miss. July 19, 2016), ECF No. 8-1. Under the Agreement, youth must be released from segregation as soon as the youth's behavior "no longer threatens imminent harm to the youth or others." *Id.* Our enforcement actions have also required jurisdictions to implement rehabilitative programming, treatment, and education services that limit the use of isolation. *See, e.g., Id.* at 36, 38 (requiring the jail to "[e]nsure that youth receive adequate free appropriate education, including special education" and "[d]evelop and implement a behavior treatment program appropriate for youth," including "[a]n individualized program [that] must be developed by a youth's interdisciplinary treatment team")

## IV.   Conclusion

Young people are afforded due process protections from punitive isolation. Practices and policies that subject them to prolonged and excessive isolation deprive them of that right.

Respectfully submitted,

ERIC S. DREIBAND
Assistant Attorney General
Civil Rights Division

STEVEN H. ROSENBAUM
Chief
Special Litigation Section

WINSOME G. GAYLE
Special Counsel
Special Litigation Section

DEENA FOX
EMILY C. KELLER
Trial Attorneys
U.S. Department of Justice
Civil Rights Division
Special Litigation Section
950 Pennsylvania Avenue, NW
Washington, DC 20530
Phone: 202-305-1361
E-mail:  deena.fox@usdoj.gov

PETER M. MCCOY, JR.
United States Attorney
District of South Carolina

By: s/ *Robert Sneed*

Robert Sneed
Assistant United States Attorney (AUSA)
Civil Division
U.S. Attorney's Office, District of South Carolina
55 Beattie Place, Suite 700
Greenville, SC 29601
(864) 282-2100,
robert.sneed@usdoj.gov

Dated: September 14, 2020

## CERTIFICATE OF SERVICE

    I hereby certify that a true and correct copy of the foregoing STATEMENT OF INTEREST OF THE UNITED STATES was served by operation of the Court's Case Management/Electronic Case Files (CM/ECF) system on September 14, 2020, on all counsel or parties of record.

                            By: *s/ Robert M. Sneed*
                                Robert M. Sneed (#07437)
                                Assistant United States Attorney
                                U.S. Attorney's Office
                                55 Beattie Place, Suite 700
                                Greenville, SC 29601
                                Phone: (864) 282-2100
                                robert.sneed@usdoj.gov

Dated: September 14, 2020