# EXHIBIT G

**IN THE UNITED STATES DISTRICT COURT**
**DISTRICT OF SOUTH CAROLINA**
**CHARLESTON DIVISION**

DISABILITY RIGHTS OF SOUTH )
CAROLINA, )                                    C.A. No.: 2:20-cv-02738-DCN
)
        Plaintiff, )
)                                                    **AFFIDAVIT OF**
vs. )                                          **JAMES B. MOORE III, ESQ.**
)
CHARLESTON COUNTY SHERIFF, )
)
        Defendant. )
_____ )

PERSONALLY APPEARED BEFORE ME, James B. Moore III, who being first duly

sworn, deposes and states as follows:

1.     I am over the age of eighteen (18) and have personal knowledge of the matters

stated herein, to the best of my knowledge and recollection.

2.     That I am a member in good standing of the South Carolina Bar, admitted to

practice law in South Carolina (2008), in the Federal District Court of South Carolina (2010) and

the United States Court of Appeals for the Fourth Circuit (2013).

3.     I have been asked by Stuart Andrews and Robert Brunson, counsel in the above-

captioned matter, to provide this affidavit regarding the market rate for hourly billing in

comparable cases such as civil rights actions involving conditions of confinement and violations

of constitutional rights. For the last 15 years, I have devoted a large percentage of my law practice

to handling complex civil rights litigation cases. As such, I believe I am in a position to know what

criteria are used to determine a reasonable legal fee, to include the time and labor required, the

novelty and difficulty of the questions involved, the skill of the attorney to provide the services

and advocacy, the fees customarily charged in the local area for such services, the amount involved

1

and the results obtained, and the experience and reputation of the lawyers performing the services, among other criteria.

4.      In providing this information, I understand that this action involves a systemic challenge to conditions of confinement for juveniles detained by the Charleston County Sheriff, alleging violations of the Eighth and Fourteenth Amendments to the United States Constitution and the Individuals with Disabilities Education Act. I further understand that the parties have entered into a Consent Order that includes substantial reforms, including the replacement of dilapidated detention facility and the closing of the solitary confinement unit. These reforms represent significant systemic changes that will protect the constitutional rights of youth in South Carolina for years to come.

5.      I have known Stuart Andrews professionally for a number of years and am familiar with his reputation in the legal community. I have had the opportunity to directly observe him in the practice of law, including his trial work. Mr. Andrews is Special Counsel at Burnette Shutt & McDaniel, with over 45 years of experience in civil rights litigation. He has devoted decades to generating systemic reform and giving lower income South Carolinians greater access to the courts. His work includes representing incarcerated individuals with mental illness in successful litigation against the South Carolina Department of Corrections, testifying before a U.S. Senate Subcommittee on solitary confinement, and serving as chair of the ACLU of South Carolina. He has been recognized by Best Lawyers in America for over 25 years and received numerous awards for his civil right work, including the University of South Carolina School of Law James Petigru Complete Lawyer Platinum Award for Professional Excellence.

6.      I am also familiar with Robert Brunson's professional reputation. Mr. Brunson is a Partner at Nelson Mullins with over 35 years of litigation experience. He is a former Editor in

Chief of the South Carolina Law Review and has taught Trial Advocacy at two law schools in South Carolina. His recognitions include The Best Lawyers in America for Commercial Litigation and Litigation-Trusts and Estates, and he has been named a Benchmark Litigation "Litigation Star" for multiple years. His extensive trial experience and leadership roles demonstrate his skill as a litigator.

7.      Based on my extensive knowledge of the South Carolina legal market and direct experience with comparable complex civil rights litigation, I can attest that the prevailing hourly rates for attorneys with their caliber of experience, expertise, and demonstrated success range from $500 to $800 per hour. These rates reflect the current market for lawyers handling sophisticated constitutional litigation, particularly systemic reform cases requiring specialized knowledge. Similarly, rates of $300 to $400 per hour for associate attorneys or attorneys with fewer years of practice fall squarely within accepted market parameters for such demanding work

8.      The hourly rates charged by Mr. Andrews ($550 per hour) and Mr. Brunson ($550 per hour) are reasonable and well within the range of market rates in South Carolina for lawyers of their years of experience, expertise, and ability in complex civil rights litigation. These rates are particularly reasonable considering: (a) the specialized expertise required for systemic conditions of confinement litigation; (b) the complexity of litigating claims under the Eighth Amendment, Fourteenth Amendment, and IDEA; (c) the substantial reforms achieved through the Consent Order; and (d) the attorneys' distinguished careers and reputations in the legal community.

9.      Having devoted a large portion of my practice to pursuing civil rights claims, particularly those involving conditions of confinement, it is my experience that the time, skill, and work it takes to achieve meaningful systemic reform through federal litigation is substantial. Cases challenging conditions of confinement for vulnerable populations such as juveniles require

extensive investigation, expert testimony, comprehensive discovery, and the ability to navigate complex constitutional and statutory frameworks. The successful negotiation of a consent decree that achieves substantial institutional reforms requires exceptional legal skill and experience.

10.     Civil rights cases challenging conditions of confinement, particularly those on behalf of juveniles, are inherently complex and often taken on a contingency or reduced fee basis. The undesirability of such cases from a financial perspective, the significant expertise required, and the public benefit achieved through successful prosecution of these claims support the reasonableness of the required fees. The replacement of a dilapidated facility and elimination of solitary confinement for juveniles represents precisely the type of systemic reform that civil rights litigation is designed to achieve.

11.     The foregoing statements are based upon my own personal knowledge and experience.


FURTHER AFFIANT SAYETH NOT.

_____
James B. Moore III, Esquire


SWORN to and subscribed before me
this ___ day of January, 2026.

_____
Notary Public for South Carolina
My Commission Expires: 03|26|34

*Julie J Long*
*NOTARY*
*My Comm. Exp. 03-26/2034*
*PUBLIC*
*South Carolina*